1  DONALD J. QUERIO (State Bar No. 54367)
   Email: djq@severson.com
2  M. ELIZABETH HOLT (State Bar No. 263206)
   meh@severson.com
3  SEVERSON & WERSON
   A Professional Corporation
4  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
5  Telephone:  (415) 398-3344
   Facsimile:  (415) 956-0439
6
   Attorneys for Defendant
7  AMERICA'S SERVICING COMPANY

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11               SAN FRANCISCO DIVISION

12 CHRISTINA LEGRAMA and HENRY         Case No.  C 10-02945 MEJ
   BANAGA, JR,
13                                     DEFENDANT AMERICA'S
             Plaintiffs,               SERVICING COMPANY'S NOTICE
14                                     OF MOTION AND MOTION TO
        vs.                            DISMISS PURSUANT TO FEDERAL
15                                     RULE OF CIVIL PROCEDURE
   FREMONT INVESTMENT & LOAN; U S      12(B)(6); MEMORANDUM OF POINTS
16 PACIFIC LOANS, INC.; DEUTSCHE BANK  AND AUTHORITIES IN SUPPORT
   NATIONAL TRUST COMPANY;             THEREOF
17 AMERICA'S SERVICING COMPANY;
   FREMONT GENERAL CREDIT              Date:        September 2, 2010
18 CORPORATION; COMMONWEALTH           Time:        10:00 a.m.
   LAND TITLE COMPANY; FIRST           Room:        B, 15th Floor
19 AMERICAN TITLE INSURANCE            Judge:       The Hon. Maria-Elena James
   COMPANY; STEPHEN R. WILLIAMS; and
20 DOES 1 through 50, inclusive,       Removal Date:       July 6, 2010
                                       Complaint Filed:    May 21, 2010
21           Defendants.

22

23

24

25

26

27

28

                              1

ASC'S MOTION TO DISMISS
                                                 Case No. C 10-02945 MEJ

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on **September 2, 2010, at 10:00 a.m.**, or as soon thereafter as counsel may be heard, in Courtroom B, 15th Floor, of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Maria-Elena James, defendant America's Servicing Company will, and hereby does, move to dismiss the complaint filed by plaintiffs Christina Lagrama and Henry Banaga, Jr., based on Federal Rule of Civil Procedure 12(b)(6).  The complaint fails to assert a claim upon which relief may be granted, as further explained in the accompanying memorandum of points and authorities.

This motion is based on this notice of motion, the accompanying memorandum of points and authorities, the accompanying request for judicial notice, the pleadings and records on file in this action, and any further briefs, evidence, authorities, or argument presented before or at the hearing of this motion.  America's Servicing Company respectfully requests an order dismissing the complaint in its entirety.

DATED:  July 13, 2010

SEVERSON & WERSON
A Professional Corporation


By: /s/   M. Elizabeth Holt
           M. Elizabeth Holt

Attorneys for Defendant
AMERICA'S SERVICING COMPANY

2

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL AND PROCEDURAL HISTORY ................................................ 1

III.   LEGAL STANDARD ............................................................................ 3

IV.   DISCUSSION ..................................................................................... 4

    A.   Claims Based Upon Federal Statutes. ........................................................ 4

        1.   The Complaint Fails To State A Claim Based On TILA. ......................... 4

            a.   TILA's Statutes Of Limitation Have Run. .................................... 4

            b.   TILA's Provisions Are Inapplicable To ASC. .............................. 5

        2.   The RESPA Claim Is Time-Barred And The Complaint Is Devoid Of Meaningful Factual Allegations As To ASC. ............................................ 6

    B.   Claims Based Upon State Statutes. ............................................................ 7

        1.   The Claims Based On California Civil Code §§ 1916.7, 1920, 1921, & 2079.16 Are Preempted By AMPTA. ........................................................ 7

        2.   Plaintiffs Fail To State A Claim Based On The Other State Statutes They Cite. ........................................................................................ 9

            a.   California Civil Code § 1632 Is Inapplicable And Any Claim Based On It Is Time-Barred. .......................................................... 9

            b.   Plaintiffs Fail To State A Viable Claim Under Any Of The Three Prongs Of California's UCL. ............................................. 10

            c.   The Claim Citing California Commercial Code § 9313 Is a Thinly-Veiled Attempt To Resurrect The "Holder Of The Note" Theory, Which The Courts Have Consistently Rejected. ............. 12

    C.   Claims Based Upon Federal and State Common Law. ........................................ 13

        1.   Claims Involving The Covenant Of Good Faith And Fair Dealing Apply Only In The Insurance Context In California. ................................ 13

        2.   Plaintiffs' Fraud Claim Is Factually Unsupported And Is Not Pled With Sufficient Particularity. .................................................................... 14

        3.   ASC Does Not Owe Plaintiffs A Fiduciary Duty. .................................. 15

        4.   Plaintiffs' Unjust Enrichment Claim Is Unsupported By Any Meaningful Factual Allegations. ............................................................ 16

i

ASC'S MOTION TO DISMISS
Case No. C 10-02945 MEJ

        5.      The Loan Documents Exhibit Neither Substantive Nor Procedural
                Unconscionability.................................................................17

     D.     Claims Sounding In Equity. ...............................................................18

     E.     "Claims" That Are Merely Remedial In Nature.................................20

V.    CONCLUSION .......................................................................................21

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

CASES

4

*Abdallah v. United Sav. Bank*,

5

    43 Cal.App.4th 1101 (1996) ............................................................................... 19

6

*Arnolds Mgmt. Corp. v. Eischen*,

    158 Cal. App. 3d 575 (1984) ....................................................................... 19, 20

7

*Ashcroft v. Iqbal*,

8

    129 S.Ct. 1937 (2009) .......................................................................... 3, 7, 17

9

*Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*,

10

    459 U.S. 519 (1983) ......................................................................................... 4

11

*Barbara A. v. John G.*,

    145 Cal.App.3d 369 (1983) .............................................................................. 15

12

*Buckland v. Threshold Enters., Ltd.*,

13

    155 Cal.App.4th 798 (2007) ............................................................................. 14

14

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,

15

    43 Cal.4th 375 (2008)..................................................................................... 15

16

*Commercial Union Ins. Co. v. Walbrook Ins. Co.*,

    41 F.3d 764 (1st Cir. 1994)............................................................................... 20

17

*Cox Commc'ns PCS, L.P. v. City of San Marcos*,

18

    204 F. Supp. 2d 1272 (S.D. Cal. 2002) .............................................................. 20

19

*Davis v. O'Melveny & Myers*,

20

    485 F.3d 1066 (9th Cir. 2007) .......................................................................... 18

21

*Delino v. Platinum Comm. Bank*,

    2009 WL 2366513 (S.D. Cal. 2009) .................................................................. 10

22

*Delino v. Platinum Comm. Bank*,

23

    628 F. Supp.2d 1226 (S.D. Cal. 2009) ............................................................... 10

24

*Fiedler v. Clark*,

    714 F.2d 77 (9th Cir. 1983) ............................................................................. 21

25

*Girard v. Delta Tower Joint Ventures*,

26

    20 Cal.App.4th 1741 (1993) ............................................................................ 15

27

*Hafiz v. Greenpoint Mortgage Funding, Inc.*,

28

    652 F.Supp.2d 1039 (N.D. Cal. 2009)................................................................ 13

*Harris v. Wachovia Mortgage, F.S.B.*,
    No. E048585, 2010 WL 2018296 (June 18, 2010) ............................................................ 13

*Herbert v. Lankershim*,
    9 Cal.2d 409 (1937) ........................................................................................................ 15

*Hubbard v. Fidelity Fed. Bank*,
    91 F.3d 75 (9th Cir. 1996) .................................................................................................. 5

*Ibara v. Plaza Home Mortgage*,
    2009 WL 2901637 (S.D. Cal. 2009) ................................................................................ 10

*In re Gilead Sci. Sec. Litig.*,
    536 F.3d 1049 (9th Cir. 2008) ............................................................................................ 3

*Johnson v. Riverside Healthcare Sys.*,
    534 F.3d 1116 (9th Cir. 2008) ............................................................................................ 3

*Karlsen v. Am. Sav. & Loan Ass'n*,
    15 Cal.App.3d 112 (Cal.App. 1971) ................................................................................ 20

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................... 10

*King v. California*,
    784 F.2d 910 (9th Cir. 1986) .............................................................................................. 4

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) .................................................................................................... 14

*Lozano v. AT & T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...................................................................................... 11, 12

*Madrid v. J.P. Morgan Chase Bank, N.A.*,
    No. 09-cv-00731-JAM-GGH, 2009 WL 3255880 (E.D. Cal. Oct. 8, 2009) .......................... 8

*Marceau v. Blackfeet Hous. Auth.*,
    540 F.3d 916 (9th Cir. 2008) .............................................................................................. 3

*McDowell v. Watson*,
    59 Cal.App.4th 1155 (1997) ............................................................................................ 20

*Meyer v. Ameriquest Mortgage Co.*,
    342 F.3d 899 (9th Cir. 2003) .............................................................................................. 4

*Molina v. Washington Mut. Bank*,
    No. 09-CV-00894-IEG, 2010 WL 431439 (S.D. Cal. Jan. 29, 2010) .................................. 11

*Monet v. Chase Home Fin., LLC*,
    No. C 10-0135 RS, 2010 WL 2486376 (N.D. Cal. June 16, 2010) ................................ 16, 17

iv

*Montoya v. Countrywide Bank,*
No. C09-00641-JW, 2009 WL 1813973 (N.D. Cal. June 25, 2009).................................. 19, 20

*Motors, Inc. v. Times Mirror Co.,*
102 Cal.App.3d 735 (1980) ........................................................................................ 11, 12

*Nagrampa v. MailCoups, Inc.,*
469 F.3d 1257 (9th Cir. 2006) ........................................................................................ 18

*Nat'l Home Equity Mortgage Ass'n v. Face,*
239 F.3d 633 (4th Cir. 2001) ........................................................................................... 8

*Nat'l Union Fire Ins. Co. v. Karp,*
108 F.3d 17 (2d Cir. 1997) ............................................................................................. 20

*Navarro v. Block,*
250 F.3d 729 (9th Cir. 2001) ............................................................................................ 3

*Nguyen v. Calhoun,*
105 Cal.App.4th 428 (2003) .................................................................................... 19, 20

*Nymark v. Heart Fed. Sav. & Loan Ass'n,*
231 Cal.App.3d 1089 (1991) .......................................................................................... 16

*Odinma v. Aurora Loan Servs.,*
No. C-09-4674 EDL, 2010 WL 2232169 (N.D. Cal. June 3, 2010) ............................... 19, 20

*Ortiz v. Accredited Home Lenders, Inc.,*
___ F. Supp. 2d. __, 2009 WL 2058784 (S.D. Cal. 2009) .................................................. 10

*Paulus v. Bob Lynch Ford, Inc.,*
139 Cal.App.4th 659 (2006) ........................................................................................... 11

*Pelayo v. Home Capital Funding,*
2009 WL 1459419 (S.D. Cal. 2009) ............................................................................... 10

*People v. Casa Blanca Convalescent Homes Inc.,*
159 Cal.App.3d 509 (1984) ............................................................................................ 11

*Schnall v. Hertz Corp.,*
78 Cal.App.4th 1144 (2000) ........................................................................................... 12

*Scripps Clinic v. Superior Court,*
108 Cal.App.4th 917 (2003) .................................................................................... 11, 12

*Shroyer v. New Cingular Wireless Services, Inc.,*
498 F.3d 976 (9th Cir. 2007) .......................................................................................... 18

*Smith v. State Farm Mutual Automobile Ins. Co.,*
93 Cal.App.4th 700 (2001) ............................................................................................ 11

v

ASC'S MOTION TO DISMISS
Case No. C 10-02945 MEJ

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ................................................................................3

*Stewart v. Mortgage Elec. Registration Sys., Inc.*,
   No. CV. 09-688-PK, 2010 WL 1054384 (D. Or. Feb. 18, 2010) ............................4

*Tarmann v. State Farm Mut. Auto Ins. Co.*,
   2 Cal.App.4th 153 (1991) ..................................................................................14

*United States Cold Storage v. Great W. Sav. & Loan Ass'n*,
   165 Cal.App.3d 1214 (1985) ..............................................................................19

*Vignolo v. Miller*,
   120 F.3d 1075 (9th Cir. 1999) ..............................................................................3

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) ..............................................................................3

*Webb v. Smart Document Solutions, LLC*,
   499 F.3d 1078 (9th Cir. 2007) ............................................................................10

*White v. Homefield Fin., Inc.*,
   545 F.Supp.2d 1159 (W.D. Wash. 2008) ..............................................................6

*Wilhelm v. Pray, Price, Williams & Russell*,
   186 Cal.App.3d 1324 (1986) ..............................................................................14

*Williams v. Countrywide Home Loans*,
   No. C 99-0242 SC, 1999 WL 740375 (N.D. Cal. Sept.15, 1999) .........................19

**STATUTES**

**UNITED STATES CODES**

12 U.S.C.
   § 2601 ...........................................................................................2, 4, 6
   § 2607(a) ................................................................................................6
   § 2607(b) ................................................................................................6
   § 2614 .....................................................................................................6
   §§ 3801-3803 .........................................................................................8

15 U.S.C.
   § 1635(f) ................................................................................................5
   § 1640(e) ................................................................................................4
   § 1641(e) ................................................................................................6

28 U.S.C.
   §§ 2201, 2202 ......................................................................................20

California Business and Professions Code
  § 17200 ..................................................................................................... 3, 10

California Civil Code
  § 1632 .................................................................................................... 2, 9, 10
  § 1670.5 ........................................................................................................... 18
  § 1916.7 ..................................................................................................... 2, 7, 8
  § 1918.5 .......................................................................................................... 2, 8
  § 1920 .......................................................................................................... 2, 7, 8
  § 1921 .......................................................................................................... 2, 7, 8
  § 2079.16 ...................................................................................................... 2, 7, 8
  § 2924(a)(1) ..................................................................................................... 12

California Commercial Code
  § 9313 ......................................................................................................... 2, 12

Uniform Commercial Code
  § 2-3202 ........................................................................................................... 3

**OTHER AUTHORITIES**

**CODE OF FEDERAL REGULATIONS**

12 C.F.R
  § 226.19(b) ........................................................................................................ 8
  § 226.20(c) ........................................................................................................ 8
  § 226.23 ............................................................................................................ 5
  § 560.210 ........................................................................................................... 8
  § 560.220(a) ....................................................................................................... 8

Federal Rules of Civil Procedure
  Rule 12(b)(6)............................................................................................... passim

4 Miller & Starr, *California Real Estate*
  § 10:212, at 686-87 (3d ed. 2003) .................................................................. 19

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Defendant America's Servicing Company ("ASC") respectfully submits this motion to dismiss the complaint filed by plaintiffs Christina Legrama and Henry Banaga, Jr., in Contra Costa County Superior Court on May 21, 2010, and removed to this Court on July 6, 2010.  As set forth in detail below, the complaint fails to state any cause of action on which relief may be granted, and it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6).

The defects of the complaint are numerous.  As explained more fully below, the twenty-two claims fall into several categories: claims based on federal statutes, claims based on state statutes, claims based on the common law, claims sounding in equity, and claims that are merely remedial in nature.  Each category of claims exhibits its own problems.  For example, many of the state law claims are preempted by federal law; the equitable claims are all barred by the tender rule; and other claims suffer from untimeliness under their applicable statutes of limitations.  In sum, as the Court will see, even when all facts are taken in the light most favorable to plaintiffs, and all reasonable inferences from those facts are drawn in plaintiffs' favor, the complaint nonetheless fails to state a single viable claim against ASC.  For these reasons, ASC respectfully requests the Court to grant its motion to dismiss in full.

## II.     FACTUAL AND PROCEDURAL HISTORY

The alleged and judicially noticeable facts of this case are as follows.[1]  On January 4, 2006,[2] plaintiffs, together with a third individual named Emma De Asis,[3] procured a $560,000 mortgage loan from defendant Fremont Investment & Loan.  *See* Complaint at ¶ 2; Deed of Trust, attached as Exh. A to Request for Judicial Notice ("RJN"), at 1-2.  The loan was secured by a Deed of Trust ("the Deed of Trust") on property located at 67 Boxford Place, San Ramon,

---

[1]  ASC does not concede the truth of any of the facts alleged by plaintiffs.

[2]  The complaint alleges that plaintiffs entered into the loan on January 13, 2006, although the Deed of Trust, a document in the public record, bears plaintiffs' notarized signature and a date of January 4, 2006.  *Compare* Complaint at ¶ 20 *with* Deed of Trust at 14-15.

[3]  Plaintiffs claim they do not know Ms. De Asis.

1  California 94583.  Complaint at ¶ 1; Deed of Trust at 1.  The beneficiary named on the Deed of

2  Trust was Mortgage Electronic Registration Systems, Inc. ("MERS").  Deed of Trust at 2.  The

3  trustee was defendant Fremont General Credit Corporation.  *Id.*  ASC, according to the complaint,

4  acted as the servicer of the promissory note secured by the Deed of Trust.  Complaint at ¶ 6.

5          Plaintiffs failed to keep up with their mortgage payments, and a Notice of Default was

6  recorded on May 26, 2009.  Notice of Default, attached as Exh. B to RJN, at 1.  When plaintiffs

7  failed to cure their default, a Notice of Trustee's Sale was recorded on April 15, 2010.  Notice of

8  Trustee's Sale, attached as Exh. C to RJN, at 1.  The trustee's sale took place on May 6, 2010.

9  Trustee's Deed Upon Sale, attached as Exh. D to RJN, at 2.

10          Plaintiffs filed this lawsuit on May 21, 2010.  In addition to ASC, the loan servicer, they

11  name the following entities as defendants:  Fremont Investment & Loan, who is alleged to be "the

12  original mortgage lender"; U.S. Pacific Loans, Inc., who is alleged to be "the original mortgage

13  broker"; Deutsche Bank National Trust Company, who is alleged to be "the successor holder of

14  the . . . Deed of Trust"; Fremont General Credit Corporation, who is alleged to be "the original

15  mortgage trustee"; Commonwealth Land Title Company, who is alleged to be "the original title

16  company"; and First American Title Company, who is alleged to be "the successor trustee under

17  the Deed of [T]rust."  Complaint at ¶¶ 3-9.  The complaint also names an individual, Stephen R.

18  Williams, who is alleged to be "the current realtor with the CHR Group, who is attempting to sell

19  the Subject Property."  *Id.* at ¶ 10.  The complaint alleges the following claims against all

20  defendants: (1) declaratory relief; (2) injunctive relief; (3) "determine nature, exten[t,] and

21  validity of lien under California Commercial Code § 9313"; (4) "contractual breach of implied

22  covenant of good faith and fair dealing"; (5) violation of the Truth in Lending Act, 15 U.S.C.

23  §1601 *et seq.* ("TILA"); (6) violation of the Real Estate Settlement Procedures Act, 12 U.S.C.

24  § 2601 *et seq.* ("RESPA"); (7) violation of California Civil Code § 1916.7b(2); (8) violation of

25  California Civil Code § 1918.5-1921.1920; (9) violation of California Civil Code § 1916.7 B;

26  (10) violation of California Civil Code § 1916.7 10(C); (11) violation of California Civil Code

27  §2079.16; (12) violation of California Civil Code § 1632; (13) violation of California Civil Code

28  §1916.7a(8); (14) rescission; (15) fraud; (16) violation of the Unfair and Deceptive Practices

1    Act;[4] (17) breach of fiduciary duty; (18) unjust enrichment; (19) "unconscionability—UCC 2-

2    3202"; (20) "predatory lending; California Business and Professions Code § 17200"; (21) quiet

3    title; [5] and (22) wrongful foreclosure.[6]

4                              **III.    LEGAL STANDARD**

5           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim may be dismissed

6    because of a "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

7    A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the

8    absence of sufficient facts alleged under a cognizable legal theory.  *Johnson v. Riverside*

9    *Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729, 732 (9th

10   Cir. 2001).

11          In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as

12   true and construed in the light most favorable to the non-moving party.  *Marceau v. Blackfeet*

13   *Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*, 120 F.3d 1075, 1077 (9th Cir.

14   1999).  The Court, however, is not required "to accept as true allegations that are merely

15   conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Sci. Sec.*

16   *Litig.*, 536 F.3d 1049, 1056-57 (9th Cir. 2008); *Sprewell v. Golden State Warriors*, 266 F.3d 979,

17   988 (9th Cir. 2001).  Although they may provide the framework for a complaint, legal

18   conclusions need not be accepted as true and "[t]hreadbare recitals of elements of a cause of

19   action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S.Ct.

20   1937, 1949-50 (2009); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th

21   Cir. 2003).  Furthermore, courts will not assume that plaintiffs "can prove facts which [they have]

22   not alleged, or that the defendants have violated . . . laws in ways that have not been alleged."

23

24   [4]  California has no statute bearing this name.  This claim is believed to refer to California's
     unfair competition law.

25
     [5]  Rather than naming "all defendants," as most of the other claims do, the twenty-first claim
26   confines itself to naming "all defendants claiming any interest in the subject property."

27   [6]  The twenty-second claim is directed only at First American Title Insurance Company, ASC,
     Williams, and "all other defendants claiming any interest in the subject property or alleging
28   possession of the power of sale of the subject property."

                                                    3

1  *Assoc. Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters*, 459 U.S. 519, 526

2  (1983).

### IV.    DISCUSSION

4      The complaint alleges twenty-two separate claims, as listed above in Section II.  For the

5  convenience of the Court and for ease of reading, counsel has attempted to group them

6  conceptually rather than following the haphazard order in which they are pled.

7      **A.    Claims Based Upon Federal Statutes.**

8           **1.    The Complaint Fails To State A Claim Based On TILA.**

9      The complaint's fifth claim alleges that ASC violated the initial disclosure requirements

10  of the Truth in Lending Act, 15 U.S.C. §1601 *et seq*. ("TILA"), by failing to provide plaintiffs

11  with certain statutorily-mandated disclosures.  Complaint at ¶¶ 67-76.  This allegation, even

12  when taken as true, contains numerous flaws that render it unfit to survive the pleading stage.

13           **a.    TILA's Statutes Of Limitation Have Run.**

14      First, plaintiffs' TILA claim is time-barred.  Courts in this Circuit have interpreted TILA

15  as giving rise to remedies of both rescission and damages.  *E.g.*, *Stewart v. Mortgage Elec.*

16  *Registration Sys., Inc.*, No. CV. 09-688-PK, 2010 WL 1054384, at *7 (D. Or. Feb. 18, 2010).  A

17  plaintiff seeking a damage remedy must bring her action within one year from the alleged

18  violation. 15 U.S.C. § 1640(e)); *see also King v. California*, 784 F.2d 910, 913 (9th Cir. 1986).

19  The violation occurs—and the one-year limitations period accrues—upon consummation of the

20  loan.  *Meyer v. Ameriquest Mortgage Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (failure to make the

21  required disclosures under TILA occurs at the time the loan documents were signed).  Here, the

22  Deed of Trust (a document that is in the public record and thus properly noticeable at the pleading

23  stage) indicates that the plaintiffs' loan was consummated on January 4, 2006, considerably more

24  than a year before plaintiffs filed this suit on May 21, 2010.[7]

25      The Ninth Circuit, moreover, has squarely rejected the argument that this one-year statute

26  of limitations should be tolled until a borrower discovers alleged errors in her lender's initial

27

---

28  [7]  Even if plaintiffs' alleged consummation date of January 13, 2006, is taken as true, the loan is
still over four years old.

4

ASC'S MOTION TO DISMISS
Case No. C 10-02945 MEJ

1    disclosures. *Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (refusing to toll the

2    statute on these grounds because "nothing prevented [the plaintiff] from comparing the loan

3    contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements").

4    Therefore, insofar as plaintiffs' TILA claim seeks damages as a remedy, it is time-barred.

5          Unlike damages claims, TILA claims seeking the remedy of rescission have a different

6    statute of limitations; they "expire three years after the date of the consummation of the

7    transaction or upon the sale of the property, whichever occurs first." 15 U.S.C. § 1635(f).  Where

8    the creditor fails to provide to the consumer a notice of right to rescind and all material

9    disclosures, TILA's implementation regulation, Regulation Z, provides that "the right to rescind

10   shall expire three years after consummation, upon transfer of all of the consumer's interest in the

11   property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23.  In this case,

12   documents in the public record indicate that a trustee's sale took place on May 6, 2010—about

13   two weeks before plaintiffs filed their complaint.  *See* Trustee's Deed of Sale at 2.  Also, as noted

14   above, the loan was consummated more than four years before plaintiffs filed their complaint—

15   well over the three-year limitations periods set forth in 15 U.S.C. § 1635(f) and 12 C.F.R.

16   § 226.23.  For these reasons, to the extent plaintiffs' TILA claim seeks the statutory remedy of

17   rescission rather than damages, it is time-barred and is therefore subject to dismissal.

18                    **b.    TILA's Provisions Are Inapplicable To ASC.**

19          Secondly, even if the relevant statutes of limitations were not a problem for plaintiffs'

20   TILA claim, the claim still fails as to ASC on its merits.  The complaint concedes that the loan

21   was originated by defendant Fremont Investment & Loan, and that ASC is merely the "loan

22   servicing agent" for defendant Deutsche Bank, whom plaintiffs describe as a "successor holder"

23   of the Deed of Trust.  *See* Complaint at ¶¶ 3, 5, and 6.  There is no allegation that ASC originated

24   the loan, nor that it played any role during the initial disclosure stages.  Consequently, ASC is not

25   a "creditor" for TILA purposes and can incur no liability as such.  *See* 15 U.S.C. § 1602(f)

26   (defining a "creditor" as "the person to whom the debt arising from the consumer credit

27   transaction is initially payable on the face of the evidence of indebtedness").

28

ASC'S MOTION TO DISMISS
                                                                     Case No. C 10-02945 MEJ

1   Non-creditors' liability under TILA, moreover, is very limited. An assignee of a note can

2   be held liable only for TILA violations that appear on the face of the loan documents. 15 U.S.C.

3   § 1641(e). Courts in this Circuit and elsewhere have interpreted TILA's assignee liability

4   provision narrowly, holding that "a TILA claim may be asserted against an assignee only for

5   'violations that a reasonable person can spot on the face of the disclosure statement or other

6   assigned documents.'" *White v. Homefield Fin., Inc.*, 545 F.Supp.2d 1159, 1168 (W.D. Wash.

7   2008) (quoting *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)). In this case,

8   the complaint points to no such reasonably apparent TILA violation on the face of any assigned

9   document, and thus ASC cannot incur liability under TILA's assignee liability provisions (even

10  assuming ASC qualifies as an "assignee"—a fact which plaintiffs do not allege).

11  For these reasons, the complaint's TILA claim is subject to prompt dismissal by the Court.

12  Moreover, particularly in light of the barriers posed by the statute of limitations, any attempt to

13  amend the TILA claim would be futile. ASC therefore requests dismissal of the TILA claim

14  without leave to amend.

15          **2.    The RESPA Claim Is Time-Barred And The Complaint Is Devoid Of
                    Meaningful Factual Allegations As To ASC.**
16

17  Next, the complaint alleges ASC violated the Real Estate Settlement Procedures Act, 12

18  U.S.C. § 2601 *et seq.* ("RESPA") "because the payments to the mortgage broker and to the lender

19  were misleading and resigned to create a windfall." Complaint at ¶ 81. Section 8(a) of RESPA

20  provides that "[n]o person shall give and no person shall accept any fee, kickback, or thing of

21  value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a

22  part of a real estate settlement service involving a federally related mortgage loan shall be

23  referred to any person." 12 U.S.C. § 2607(a). Section 8(b) similarly provides that "[n]o person

24  shall give and no person shall accept any portion, split, or percentage of any charge made or

25  received for the rendering of a real estate settlement service in connection with a transaction

26  involving a federally related mortgage loan other than for services actually performed." 12 U.S.C.

27  § 2607(b). A one-year statute of limitations applies to any action brought pursuant to these

28  sections. 12 U.S.C. § 2614.

6

1    As noted above, plaintiffs' loan was executed on January 4, 2006, and this action was

2  filed on May 21, 2010.  The complaint, moreover, pleads no facts that would support the

3  application of equitable tolling of § 2614's one-year statute of limitations.  As such, based on the

4  face of the complaint and judicially-noticeable documents in the public record, plaintiffs' RESPA

5  claim is time-barred.

6    Moreover, the complaint's allegations are devoid of any factual allegations specific to

7  ASC.  It describes various wrongs allegedly committed by defendants Fremont Investment &

8  Loan, the loan originator, and U.S. Pacific Loans, Inc., who plaintiffs claim was their mortgage

9  broker.  But the factual basis for plaintiffs' RESPA claim against ASC—if indeed one exists—is

10  entirely absent from the complaint.  For this reason, ASC is left without notice of the nature of the

11  charges against it.  In other words, the complaint fails to meet the basic standards of notice

12  pleading.  *See Iqbal*, 129 S. Ct. at 1961 (explaining that a defendant is entitled to "fair notice of

13  what the . . . claim is and the grounds upon which it rests" (alteration original) (internal quotation

14  marks omitted)).  Therefore, this claim cannot survive ASC's motion to dismiss under Rule

15  12(b)(6).

16    For these reasons, ASC's motion should be granted with respect to the RESPA claim.

17  Moreover, as the date on the Deed of Trust attached to the complaint indisputably indicates the

18  RESPA claim is time-barred, plaintiffs can allege no set of facts that would make this claim

19  viable.  Therefore, leave to amend would be futile and should not be allowed in this instance.

20    **B.    Claims Based Upon State Statutes.**

21      **1.    The Claims Based On California Civil Code §§ 1916.7, 1920, 1921, & 2079.16 Are Preempted By AMPTA.**

22

23    The seventh, eighth, ninth, tenth, eleventh, and thirteenth claims in the complaint are

24  preempted by federal law and should be dismissed outright.

25    It should first be noted that the statutory citations in these claims contain numerous errors.

26  Based on the language quoted at length in the body of the complaint, however, it is possible to

27  discern which statutes in the California Civil Code plaintiffs mean to cite.  Specifically, ASC

28  believes that the seventh claim's citation to "§ 1916.7b(2)" refers to § 1916.7(b)(2); the eighth

7

1    claim's citation to "§ 1918.5-1921.1920" refers to § 1920(a); the ninth claim's citation to

2    "§ 1916.7B" refers to § 1916.7(b)(4)(B); the tenth claim's citation to "§ 1916.7 10(c)" refers to

3    § 1916.7(c); the eleventh claim's citation to § 2079.16 is correct; and the thirteenth claim's

4    citation to "§ 1916.7a(8)" refers to § 1916.7(b)(8).

5         It is well-settled that California Civil Code §§ 1916.7, 1920, 1921, and 2079.16 are

6    preempted by the federal Alternative Mortgage Transactions Parity Act, 12 U.S.C. §§ 3801 *et seq.*

7    ("AMPTA").  AMTPA was enacted specifically to create parity between state and federally

8    chartered lenders making variable rate mortgage loans.  12 U.S.C. §§ 3801-3803.  "In enacting

9    the Parity Act, Congress clearly intended to preempt state law to the extent it authorized non-

10   federally chartered housing creditors to take advantage of the federal regulations for alternative

11   mortgage transactions that govern federally chartered lending institutions."  *Nat'l Home Equity*

12   *Mortgage Ass'n v. Face*, 239 F.3d 633, 637 (4th Cir. 2001); *see also Madrid v. J.P. Morgan*

13   *Chase Bank, N.A.*, No. 09-cv-00731-JAM-GGH, 2009 WL 3255880, at *3 (E.D. Cal. Oct. 8,

14   2009) (explaining that AMPTA "was enacted with the intention of permitting non-federally

15   chartered housing creditors to engage in alternative mortgage financing under federal law").

16        The federal Office of Thrift Services ("OTS") promulgates regulations implementing

17   AMPTA, which state that lenders making alternative mortgage (i.e., adjustable rate loans) need

18   not comply with any state laws so long as they comply with specified OTS regulations.  "A

19   housing creditor . . . may make an alternative mortgage transaction . . . by following the

20   regulations identified in paragraph (b) of this section, notwithstanding any state constitution, law,

21   or regulation."  12 C.F.R. § 560.220(a) (emphasis added).  The two regulations identified in

22   § 560.220(b) are §§ 560.35 and 560.210.  The latter regulation sets forth the disclosures required

23   for adjustable rate loans—namely, "the initial disclosures described at 12 C.F.R § 226.19(b) and

24   the adjustment notices described at 12 C.F.R § 226.20(c) for variable rate transactions."

25   12 C.F.R. § 560.210.

26        California Civil Code §§ 1916.7, 1920, 1921, and 2079.16 are all state statutes that set

27   forth assorted disclosure requirements for mortgage lenders.  Federal regulations promulgated by

28   OTS, which set forth mandatory disclosures for adjustable rate mortgage loans, of necessity,

8

1  preempt these state provisions; without this rule, state and federal law would burden lenders with

2  conflicting sets of required disclosures.  Because these state statutes are preempted, plaintiffs

3  cannot state a viable claim under them.

4          Furthermore, even if these state law provisions were applicable, ASC was not the

5  originating lender and therefore had nothing to do with the disclosures to which plaintiffs claim

6  they were entitled under the California Civil Code.  For these reasons, the Court should grant

7  ASC's motion to dismiss with regard to claims seven, eight, nine, ten, eleven, and thirteen.

8              **2.      Plaintiffs Fail To State A Claim Based On The Other State Statutes
                          They Cite.**

9

10                 **a.      California Civil Code § 1632 Is Inapplicable And Any Claim
                             Based On It Is Time-Barred.**

11

12         The twelfth claim in the complaint alleges ASC violated California Civil Code § 1632 by

13  failing to provide plaintiffs with a Tagalog translation of their loan documents.  This section of

14  the Civil Code, however, requires only that "[a]ny person engaged in a trade or business who

15  negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in

16  the course of entering into any of the following, shall deliver to the other party to the contract or

17  agreement and prior to the execution thereof, a translation of the contract or agreement in the

18  language in which the contract or agreement was negotiated, which includes a translation of every

19  term and condition in that contract or agreement[.]"  Cal. Civil Code § 1632(b).  Here, although

20  plaintiffs allege Tagalog is their native language, there is no allegation that the disputed

21  transactions were actually negotiated in Tagalog by any defendant, and certainly not by ASC,

22  who was not involved with the loan origination.  Therefore the complaint omits a basic threshold

23  requirement for the applicability of § 1632.

24         Moreover, this statute expressly applies only to loans or extensions of credit "secured

25  other than by real property."  Cal. Civ. Code § 1632(b)(2).  Plaintiffs' approach to this stark

26  statutory problem is to simply ignore it.  Section 1632(b)(2) does not apply to loans secured by

27  real estate (i.e. mortgages) except for a few which fit into an exception listed in § 1632(b)(4) or

28  § 1632(b)(5), and plaintiffs do not plead any facts upon which any such exception could be based.

1    Even in the case of a brokered loan fitting the exceptions, courts have held that a § 1632

2   claim cannot be asserted against non-brokers for real estate mortgages.  *See, e.g., Ibara v. Plaza*

3   *Home Mortgage*, 2009 WL 2901637, *5 (S.D. Cal. 2009); *Delino v. Platinum Comm. Bank*, 2009

4   WL 2366513, *6 (S.D. Cal. 2009); *Ortiz v. Accredited Home Lenders, Inc.*, ___ F. Supp. 2d. __,

5   2009 WL 2058784, *6-7 (S.D. Cal. 2009) (defendant must either be a broker or one who had a

6   principal-agent relationship with a broker); *Pelayo v. Home Capital Funding*, 2009 WL 1459419,

7   *7 (S.D. Cal. 2009).  As noted above, ASC is merely the loan servicer, and therefore is not

8   subject to plaintiffs' section 1632 claim.

9    Third, there is a one year statute of limitations for this statute, and plaintiffs do not explain

10   why their 2006 loan can be sued upon in 2010.  *See Delino v. Platinum Comm. Bank*, 628 F.

11   Supp.2d 1226, 1234 (S.D. Cal. 2009) (citing Cal. Civ. Code Pro. § 340(a)'s one year statute of

12   limitations as applicable to an action based upon § 1632).  Plaintiffs' claim is therefore time-

13   barred as well.

14    For all these reasons, this cause of action should be dismissed, and because amendment

15   would be futile, it should be dismissed with prejudice.

16              **b.       Plaintiffs Fail To State A Viable Claim Under Any Of The**
                           **Three Prongs Of California's UCL.**
17

18    The sixteenth and twentieth claims in the complaint, which appear to be largely

19   duplicative, assert violations of California's unfair competition law ("UCL").  California's UCL

20   prohibits acts or practices that are (1) fraudulent, (2) unlawful, or (3) unfair.  Cal. Bus. & Prof.

21   Code § 17200.  Each prong of the UCL constitutes a separate and distinct theory of liability.

22   *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).   Plaintiffs argue (or at least

23   mention) all three theories here.

24    As explained herein, none of plaintiffs' alleged statutory violations are viable, and

25   therefore their "unlawful" claim is itself untenable.  *See Webb v. Smart Document Solutions, LLC*,

26   499 F.3d 1078, 1082 (9th Cir. 2007) (noting that the alleged conduct "must violate a law . . . in

27   order for Plaintiffs to state a claim for relief under Section 17200's 'unlawful' prong").  Likewise,

28

10

1   plaintiffs' fraud claim, as explained below, is not pled with sufficient specificity and therefore

2   cannot survive a motion to dismiss.  Therefore plaintiffs cannot rely on the fraud prong of UCL.

3           As to the "unfair" prong of the UCL, California courts traditionally have applied a

4   balancing test.  Under that test, "the determination of whether a particular business practice is

5   unfair necessarily involves an examination of its impact on its alleged victim, balanced against

6   the reasons, justifications and motives of the alleged wrongdoer.  In brief, the court . . . weigh[s]

7   the utility of the defendant's conduct against the gravity of the harm to the alleged victims."

8   *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (1980); *see also People v. Casa*

9   *Blanca Convalescent Homes Inc.*, 159 Cal.App.3d 509, 530 (1984) (stating that a practice in

10  California is unfair "when it offends an established public policy or when the practice is immoral,

11  unethical, oppressive, unscrupulous or substantially injurious to consumers.").  In *Cel-Tech*

12  *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, however, the California Supreme

13  Court rejected that test and instead held that in a claim brought by a competitor, "any finding of

14  unfairness . . . [must] be tethered to some legislatively declared policy."  20 Cal.4th 163, 185

15  (1999).  Yet, because *Cel-Tech* expressly limited its holding to competitor lawsuits, *id.* at 187

16  n.12, the appropriate test to determine whether a practice is "unfair" in a consumer case under

17  California law remains uncertain.  *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735

18  (9th Cir. 2007) (explaining that "California's unfair competition law, as it applies to consumer

19  suits, is currently in flux"); *Molina v. Washington Mut. Bank*, No. 09-CV-00894-IEG, 2010 WL

20  431439, at *9 (S.D. Cal. Jan. 29, 2010) (noting split of authority); *Paulus v. Bob Lynch Ford,*

21  *Inc.*, 139 Cal.App.4th 659, 679-80 (2006) (same).  *Compare, e.g.*, *Smith v. State Farm Mutual*

22  *Automobile Ins. Co.*, 93 Cal.App.4th 700, 720 n.23 (2001) ("we are not to read *Cel-Tech* as

23  suggesting that such a restrictive definition of 'unfair' should be applied in the case of an alleged

24  consumer injury"), *with, e.g.*, *Scripps Clinic v. Superior Court*, 108 Cal.App.4th 917, 940 (2003)

25  (requiring, under *Cel-Tech*, that a UCL claim be tethered to a legislatively declared policy).

26          The Ninth Circuit has observed that these two options—to apply *Cel-Tech* directly to

27  consumer cases and require that the unfairness be tied to a "legislatively declared" policy, *e.g.*,

28  *Scripps Clinic*, 108 Cal.App.4th at 940, or to adhere to the former balancing test as stated in cases

such as *Motors, Inc.*, 102 Cal.App.3d at 740—are not mutually exclusive. *Lozano*, 504 F.3d at 736; *see Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144 (2000) (reversing the dismissal of a complaint in an unfair competition case where the alleged unfairness was both tethered to a legislatively declared policy and the plaintiff could prove facts showing that the harm was not outweighed by the utility).

In this case, the complaint falls woefully short of stating a claim under either the *Scripps* version or the *Motors, Inc.* version of the UCL's "unfair" prong. Plaintiffs have made no attempt to address the existence of a legislatively declared policy that would prohibit any business practice employed by ASC. Nor have they alleged any facts whatsoever with respect to the harm/utility calculus of ASC's business practices. The complaint, in fact, is extremely vague about which of ASC's practices (if any) plaintiffs wish to challenge. ASC is not even mentioned by name in the body of the sixteenth and twentieth claims; rather, these two claims are simply alleged generally against "all defendants." *See* Complaint at ¶¶ 132-36; 151-56. The two UCL claims, in short, contain almost no substance and should be dismissed.

### c. The Claim Citing California Commercial Code § 9313 Is a Thinly-Veiled Attempt To Resurrect The "Holder Of The Note" Theory, Which The Courts Have Consistently Rejected.

The third claim in the complaint bears the confusing label of "Determine Nature, Exten[t,] and Validity of Lien under California Commercial Code § 9313."[8] An examination of the body of the claim, however, reveals this is actually nothing more than an attempt to resurrect the infamous and oft-overruled "holder of the note theory." Based on this specious theory, the complaint appears to be claiming that the Deed of Trust is void because its holder is not in possession of plaintiffs' original promissory note.

On the contrary, it is well-settled that California law does not require possession of the note as a precondition to non-judicial foreclosure under a deed of trust. Rather, California Civil Code § 2924(a)(1) specifically confers upon the trustee of a deed of trust the right to initiate the

---

[8] Commercial Code § 9313, which addresses the perfection of security interests under California's version of the Uniform Commercial Code or "UCC," has no applicability to non-judicial foreclosure proceedings such as the one at dispute in this case.

12

ASC'S MOTION TO DISMISS
Case No. C 10-02945 MEJ

1   foreclosure process; indeed, under this statute, the trustee has the power and the duty to initiate

2   foreclosure proceedings on the property upon the borrower's default, which generally results in a

3   sale of the property.  In short, "[p]roduction of the original note is not required to proceed with

4   this process."  *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal.

5   2009).  In this case, non-party First American LoanStar Trustee Services, the trustee, filed a

6   notice of trustee's sale and conducted the sale, and defendant Deutsche Bank National Trust

7   Company, as Trustee for GSAMP 2006-FM1, purchased the subject property for $510,000

8   (resulting, incidentally, in a significant loss to the holder of the note, given that plaintiffs owed

9   $709,210.51 in unpaid debt).  Notice of Trustee's Sale at 1; Trustee's Deed Upon Sale at 1.

10   These proceedings were in full conformity with California's non-judicial foreclosure statutes; and

11   ASC was involved only indirectly, in its capacity as servicer of plaintiffs' delinquent promissory

12   note.  Therefore, the third claim is entirely lacking in merit and should not be permitted to survive

13   the pleading stage.

14         **C.**     **Claims Based Upon Federal and State Common Law.**

15             **1.**     **Claims Involving The Covenant Of Good Faith And Fair Dealing**
                **Apply Only In The Insurance Context In California.**

16

17         The fourth claim in the complaint alleges a breach of the covenant of good faith and fair

18   dealing by allowing the trustee's sale to take place.  Complaint at ¶ 64.  Leaving aside the fact

19   that this factual allegation as to ASC's role in the foreclosure proceedings is unsupported by the

20   rest of the complaint, the Court may easily dispose of this claim because it is well-settled in

21   California that "the tort of breach of the covenant of good faith and fair dealing applies only in

22   the context of insurance contracts."  *Harris v. Wachovia Mortgage, F.S.B.*, No. E048585, 2010

23   WL 2018296, at *2 (June 18, 2010) (citing *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th

24   85, 102 (1995)).  As no insurance contract is involved in this case, this claim may be dismissed

25   outright under Rule 12(b)(6), and no leave to amend should be granted.

26

27

28

07685/0641/826739.1

**2.     Plaintiffs' Fraud Claim Is Factually Unsupported And Is Not Pled With Sufficient Particularity.**

The fifteenth claim in the complaint, which alleges that ASC and the other defendants are liable for fraud, is likewise untenable.  Plaintiffs' sole bases for this claim are certain alleged irregularities that allegedly occurred at the inception of their loan, long before ASC was ever involved.

Under well-established California law, "general pleading of the legal conclusion of fraud is insufficient." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1331 (1986). Instead, "every element of the cause of action for fraud must be alleged in full, factually and specifically, and the policy of liberal construction of pleading will not usually be invoked to sustain a pleading that is defective in any material respect." *Id.* The elements of fraud under California law are: (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of the statement's falsity (scienter); (c) intent to defraud (i.e., to induce action in reliance on the misrepresentation); (d) justifiable reliance; and (e) resulting damage. *See, e.g.*, *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996); *Buckland v. Threshold Enters., Ltd.*, 155 Cal.App.4th 798, 806-07 (2007).  "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto Ins. Co.*, 2 Cal.App.4th 153, 157 (1991).

Here, the complaint contains no specifics as to any of the five elements of fraud, as listed in *Lazar*.  Neither does it allege "the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, [nor] when it was said or written." *See Tarmann*, 2 Cal.App.4th at 157.  A vague, unsubstantiated averment that ASC and the other defendants induced plaintiffs to proceed with their loan and engaged in questionable practices in order to do so, is insufficient to meet the heightened pleading standards for fraud claims under California law.  Moreover, even taking the complaint's allegations of irregularity at the loan inception as true, the complaint admits that ASC only became involved

14

1  with plaintiffs subsequent to the loan inception—effectively conceding that none of the alleged

2  facts in the fraud claim are relevant to ASC.  *See* Complaint at ¶¶ 5-6 (alleging that ASC only

3  became the servicer when Deutsche Bank became the holder of the note).

4  For these reasons, the fraud claim advanced by plaintiffs against ASC should be

5  dismissed.

6  **3.  ASC Does Not Owe Plaintiffs A Fiduciary Duty.**

7  In their seventeenth claim, plaintiffs aver ASC breached its fiduciary duty by "plac[ing]

8  Plaintiffs in a serious disadvantage and potential loss of their home."  Complaint at ¶ 141.  This

9  allegation fails to state a viable claim because it sets forth no facts showing ASC owed plaintiffs a

10  fiduciary duty.

11  A fiduciary relationship is a "relation existing between two parties to a transaction

12  wherein one of the parties to a transaction is in duty bound to act with the utmost good faith for

13  the benefit of the other party."  *Herbert v. Lankershim*, 9 Cal.2d 409, 483 (1937).  This special

14  relationship "ordinarily arises where a confidence is reposed by one person in the integrity of

15  another, and in such a relation the party in whom the confidence is reposed, if he [or she]

16  voluntarily accepts or assumes to accept the confidence, can take no advantage from his [or her]

17  acts relating to the interest of the other party without the latter's knowledge or consent . . . ."  *Id.*;

18  *see also Barbara A. v. John G.*, 145 Cal.App.3d 369, 382 (1983).

19  No fiduciary relationship is established, however, "merely because the parties reposed

20  trust and confidence in each other."  *Girard v. Delta Tower Joint Ventures*, 20 Cal.App.4th 1741,

21  1749 (1993).  Rather, "[b]efore a person can be charged with a fiduciary obligation, he must

22  either knowingly undertake to act on behalf and for the benefit of another, or must enter into a

23  relationship which imposes that undertaking as a matter of law."  *City of Hope Nat'l Med. Ctr. v.*

24  *Genentech, Inc.*, 43 Cal.4th 375, 385 (2008).

25  California courts have consistently refused to extend the "'special relationship' doctrine to

26  include ordinary commercial contractual relationships," including debtor-creditor relationships.

27  *Girard*, 20 Cal.App.4th at 1749 (citations omitted).  Indeed, they have routinely held the opposite,

28  namely that "[t]he relationship between a lending institution and its borrower-client is not

15

ASC'S MOTION TO DISMISS
Case No. C 10-02945 MEJ

1  fiduciary in nature." *Nymark v. Heart Fed. Sav. & Loan Ass'n,* 231 Cal.App.3d 1089, 1093 n.1

2  (1991).

3          Here, even the most liberal and generous interpretation of the complaint would indicate

4  that plaintiffs and ASC, at most, are alleged to have been in a relationship resembling that

5  between a debtor and creditor.  As plaintiffs allege nothing, other than the fact of this debtor-

6  creditor-like relationship, from which a fiduciary duty might arise, their breach of fiduciary duty

7  claim cannot survive the pleading stage and should be dismissed.

8          **4.    Plaintiffs' Unjust Enrichment Claim Is Unsupported By Any**
           **Meaningful Factual Allegations.**
9

10         The complaint's eighteenth claim alleges unjust enrichment, contending that "a forced

11  sale of [plaintiffs'] home, and an allowance for [defendants] to recoup the extreme profits enjoyed

12  by forcing [p]laintiffs into an imbalance of principal to interest ratio, would be inequitable and

13  unconscionable."  Complaint at ¶ 146.

14         The proper conceptualization of unjust enrichment claims has been the subject of some

15  debate, both in the California state courts and in the Northern District of California.  One judge in

16  this District recently collated and summarized the prevailing theories on unjust enrichment,

17  noting that some courts "read a plaintiff's claim for unjust enrichment as a cause of action"

18  whereas others treat it "as an effect that must be tethered to a distinct legal theory or plea for

19  relief, like an action premised on a quasi-contract theory."  *Monet v. Chase Home Fin., LLC*,

20  No. C 10-0135 RS, 2010 WL 2486376, at *2 (N.D. Cal. June 16, 2010).  After surveying the case

21  law, *Monet* concludes that, on the most coherent view, a claim for unjust enrichment does not lie

22  "any time a defendant retains a benefit to which he or she was not entitled."  *Id.* at *3.  Rather,

23  there are only "a handful of factual scenarios where a theory of unjust enrichment has historically

24  supported a restitutionary remedy."  *Id.*  These scenarios are as follows:

25              A plaintiff may, for example, advance a claim as an alternative to
                breach of contract damages when the parties have a contract that
26              was procured by fraud or is for some reason unenforceable.  Or,
                where the plaintiff cannot assert title or right to possession of
27              particular property, but nevertheless can show just grounds for
                recovering money to pay for some benefit the defendant received
28              from him, the plaintiff has a right to restitution at law through an

16

ASC'S MOTION TO DISMISS
                                                                       Case No. C 10-02945 MEJ

action derived from the common-law writ of assumpsit (this method implies a contract at law, or a quasi-contract).  Finally, a plaintiff may seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession.

*Id.* (internal citations and quotation marks omitted).

In this instance, plaintiffs' unjust enrichment theory fits, if anywhere, into the third factual scenario described in *Monet*.  As noted above, they appear to be alleging, in the vaguest of terms, that various contractual provisions governing their mortgage loan were "inequitable" and not made in good conscience.  Complaint at ¶¶ 142-46.  However, unlike the plaintiff in *Monet*, whose complaint offered a detailed description of a series of events whereby his lenders improperly allocated his mortgage payments among themselves and then foreclosed, plaintiffs have failed to indicate how "funds or property in the defendant[s'] possession" could in any way be tied to funds or property "belonging in good conscience to the plaintiff[s]."  A simple averment that some of the defendants received a "windfall" by their interactions with plaintiffs falls far short of the pleading standards described in *Monet*, and more fundamentally, those described by *Iqbal*.  *See* 129 S. Ct. at 1949-50 ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, even taking the alleged facts in the light most favorable to plaintiffs, the complaint fails to allege a viable claim for unjust enrichment.  ASC's motion to dismiss under Rule 12(b)(6) should be granted with respect to this claim.

### 5.   The Loan Documents Exhibit Neither Substantive Nor Procedural Unconscionability.

Plaintiffs' nineteenth claim, entitled "unconscionability—UCC-2-3202,"[9] should likewise be dismissed, as the facts, even when taken in the light most favorable to plaintiffs, fail to state a viable claim.

---

[9]  This is presumed to be a reference to the Uniform Commercial Code, which is not a statute that exists in California.

17

1   Pursuant to Cal. Civil Code § 1670.5, a court may refuse to enforce a contract or

2   individual clause if it finds, as a matter of law, that the contract or provision was unconscionable

3   at the time it was made.  California courts have established that "[u]nder California law, a

4   contract provision is unenforceable due to unconscionability only if it is both procedurally and

5   substantively unconscionable."  *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976,

6   981 (9th Cir. 2007).  Substantive unconscionability "focuses on the terms of the agreement and

7   whether those terms are so one-sided as to *shock the conscience*."  *Davis v. O'Melveny & Myers*,

8   485 F.3d 1066, 1075 (9th Cir. 2007) (emphasis original).  By contrast, "[p]rocedural

9   unconscionability analysis focuses on oppression or surprise.  Oppression arises from an

10  inequality of bargaining power that results in no real negotiation and an absence of meaningful

11  choice, while surprise involves the extent to which the supposedly agreed-upon terms are hidden

12  in a prolix printed form drafted by the party seeking to enforce them."  *Nagrampa v. MailCoups,*

13  *Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006) (internal citations and quotation marks omitted).)

14  None of ASC's alleged actions in this case rise to the level of either substantive or

15  procedural unconscionability, even when all inferences are drawn in plaintiffs' favor.  This is a

16  simple non-judicial foreclosure case.  As to substantive unconscionability, the loan documents,

17  which have been in the public record from the date they were recorded, can in no way be said to

18  "be so one-sided as to shock the conscience."  Indeed, the Deed of Trust's footer indicates that it

19  is patterned on Form 3005 1/01, which is a standardized form authored by United States

20  governmental entities Fannie Mae and Freddie Mac.  *See* Deed of Trust at 1.  As such, identical or

21  nearly identical forms are employed in a vast number of mortgage loan transactions nationwide;

22  there is nothing "shocking" about them.  Moreover, plaintiffs allege no facts which would

23  indicate the existence of "oppression" or "surprise" characteristic of procedural

24  unconscionability, at least with respect to ASC's behavior.  This claim for relief should be

25  dismissed.

26      **D.     Claims Sounding In Equity.**

27  Plaintiffs' fourteenth, twenty-first, and twenty-second claims are entitled, respectively,

28  "rescission," "quiet title," and "wrongful foreclosure"—all of which are essentially equitable

1   remedies as opposed to stand-alone claims. Under California law, a plaintiff lacks standing to

2   challenge a foreclosure sale in equity unless he or she first tenders the undisputed obligation in

3   full. Tender of the amount owed is a condition precedent to any claim of wrongful foreclosure or

4   challenging the regularity or validity of a foreclosure sale. *See Abdallah v. United Sav. Bank*,

5   43 Cal.App.4th 1101, 1109 (1996) (explaining that the tender rule applies to "any cause of action

6   for irregularity in the sale procedure"); *United States Cold Storage v. Great W. Sav. & Loan*

7   *Ass'n*, 165 Cal.App.3d 1214, 1225 (1985); *Arnolds Mgmt. Corp. v. Eischen*, 158 Cal. App. 3d

8   575, 578-79 (1984).

9       This "tender rule" is strictly applied by the California courts. *See Nguyen v. Calhoun*,

10  105 Cal.App.4th 428, 439 (2003). It has, moreover, been applied with equal strictness by this

11  Court. *E.g.*, *Odinma v. Aurora Loan Servs.*, No. C-09-4674 EDL, 2010 WL 2232169 at *4 (N.D.

12  Cal. June 3, 2010) (explaining that "California district courts apply the tender rule in examining

13  wrongful foreclosure claims" and listing examples). The application of the "tender rule" prevents

14  "a court from uselessly setting aside a foreclosure sale on a technical ground when the party

15  making the challenge has not established his ability to purchase the property." *Williams v.*

16  *Countrywide Home Loans*, No. C 99-0242 SC, 1999 WL 740375, at *2 (N.D. Cal. Sept.15, 1999).

17  In fact, "[u]nder California law, the 'tender rule' requires that as a precondition to challenging a

18  foreclosure sale, *or any cause of action implicitly integrated to the sale*, the borrower must make

19  a valid and viable tender of payment of the debt." *Montoya v. Countrywide Bank*, No. C09-

20  00641-JW, 2009 WL 1813973, at * 11-12 (N.D. Cal. June 25, 2009) (emphasis added).

21      The reasoning behind such strict application of the "tender rule" is explained by a

22  respected treatise as follows:

23              A challenge to the validity of the trustee's sale is an attempt to have
                the sale set aside and to have the title restored. The action is in

24              equity, and a trustor seeking to set the sale aside is required to do
                equity before the court will exercise its equitable powers.

25              Therefore, as a condition precedent to an action by the trustor to set
                aside the trustee's sale . . . the trustor must pay, or offer to pay, the

26              secured debt . . . . Without an allegation of such a tender in the
                complaint that attacks the validity of the sale, the complaint does

27              not state a cause of action.

28  4 Miller & Starr, *California Real Estate* § 10:212, at 686-87 (3d ed. 2003) (footnotes omitted).

1    Here, plaintiffs have not definitively averred that they are either willing or able to tender

2    the money owed.  *Cf. Nguyen*, 105 Cal.App.4th at 439 ("it is a debtor's responsibility to make an

3    unambiguous tender of the entire amount due or else suffer the consequence that the tender is of

4    no effect.").  Nor do they even allege that they reasonably anticipate gaining that ability at a

5    future time.  Nonetheless, rescission, quiet title, and wrongful foreclosure claims, either directly

6    challenge the foreclosure sale in equity, or are "implicitly integrated" with such a challenge.  *See*

7    *Montoya*, 2009 WL 1813973, at *11-12; *see also Odinma*, 2010 WL 2232169, at *6 (dismissing

8    all claims seeking "rescission to set aside the foreclosure sale"); *Arnolds Management Corp. v.*

9    *Eischen*, 158 Cal.App.3d 575, 579 (Cal.App. 1984) ("A cause of action 'implicitly integrated'

10   with the irregular sale fails unless the trustor can allege and establish a valid tender."); *Karlsen v.*

11   *Am. Sav. & Loan Ass'n*, 15 Cal.App.3d 112, 121 (Cal.App. 1971) (explaining that a cause of

12   action alleging breach of an oral agreement, accounting, and constructive trust were "implicitly

13   integrated" with challenge to foreclosure sale).  Plaintiffs' failure to tender their undisputed

14   obligation in full necessitates outright dismissal of all these equitable claims for relief.

15            **E.     "Claims" That Are Merely Remedial In Nature.**

16            Finally, the complaint's first and second claims seek "declaratory relief" and "injunctive

17   relief," respectively.  Complaint at ¶¶ 43-52.  Injunctive relief is not a cause of action.  It is a

18   remedy that is must be tethered to some independent legal duty owed by the defendant to the

19   plaintiff.  *McDowell v. Watson*, 59 Cal.App.4th 1155, 1159 (1997); *Cox Commc'ns PCS, L.P. v.*

20   *City of San Marcos*, 204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002).  The injunctive relief claim,

21   therefore, cannot stand on its own.  As already shown, plaintiffs' other claims are defective.

22   Consequently, there is nothing to support their requests for an injunction, and the first claim, too,

23   should be dismissed.

24            Similarly, the complaint's second claim seeks declaratory relief.  Like injunctive relief,

25   declaratory relief is not an independent cause of action, but only a remedy.  28 U.S.C. §§ 2201,

26   2202; *see also Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The DJA is

27   procedural in nature, and merely offers an *additional remedy* to litigants."); *Commercial Union*

28   *Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 775 (1st Cir. 1994) ("A declaratory judgment is not a

20

1  theory of recovery."); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) ("The Declaratory

2  Judgment Act does not provide an independent jurisdictional basis for suits in federal court."

3  (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  As demonstrated

4  above, there are no claims on which plaintiffs may state a basis for relief, and therefore there is

5  nothing to "declare."  Accordingly, the second claim should also be dismissed.

## V.       CONCLUSION

7       For the reasons stated herein, ASC requests that the Court grant its motion to dismiss

8  pursuant to Rule 12(b)(6), based on plaintiffs' failure to state a single viable claim for relief.

9  DATED:  July 13, 2010                     SEVERSON & WERSON
                                              A Professional Corporation
10

11

12                                            By: /s/   M. Elizabeth Holt
                                                     M. Elizabeth Holt
13
                                              Attorneys for Defendant
14                                            AMERICA'S SERVICING COMPANY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

**PROOF OF SERVICE**

I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I am employed in the City of San Francisco, California; my business address is Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, CA  94111.

On the date below I served a copy of the following document(s):

**DEFENDANT AMERICA'S SERVICING COMPANY'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

on all interested parties in said case addressed as follows:

Christina Legrama
Henry Banaga, Jr.
57 Boxford Place
San Ramon, CA 94583

Tel.  (925) 493-0893

**Plaintiffs**

☒ **(BY MAIL)**  By placing the envelope for collection and mailing following our ordinary business practices.  I am readily familiar with the firm's practice of collecting and processing correspondence for mailing.  On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in San Francisco, California in sealed envelopes with postage fully prepaid.

☐ **(BY HAND)**  By placing the documents in an envelope or package addressed to the persons listed above and providing them to a professional messenger service for delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

This declaration is executed in San Francisco, California, on July 13, 2010.

/s/Isabel Kunst
Isabel Kunst