1
2
3
4

UNITED STATES  DISTRICT COURT

5

Northern District of California

6
7

CHRISTINA LEGRAMA, *et al.*,

8

Plaintiffs,

No. C 10-02945 MEJ

9

v.

**AMENDED ORDER RE:
DEFENDANTS' MOTIONS TO
DISMISS (DKT. ##5, 19)**

FREMONT INVESTMENT & LOAN, *et al.*,

10
11

Defendants.
_____/

(Amended to correct error in conclusion)

12

**I.  INTRODUCTION**

13

Before the Court are Defendants America's Servicing Company's ("ASC") and

14

Commonwealth Land Title Company's ("CLTC") respective motions to dismiss pro se Plaintiffs

15

Christine Legrama and Henry Banaga, Jr.'s ("Plaintiffs") complaint for failure to state a claim upon

16

which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. ## 5, 19.)

17

On September 30, 2010, the Court held a hearing on the matters.  After consideration of the parties'

18

papers and oral arguments, relevant legal authority, and good cause appearing, the Court ORDERS

19

as follows.

20

**II.  REQUEST FOR JUDICIAL NOTICE**

21

On July 13, 2010, ASC filed a Request for Judicial Notice ("RJN") (Dkt. #6), and on August

22

5, 2010, CLTC filed one as well (Dkt. #20).  Defendants ask the Court to take judicial notice of the

23

following:  (1) a Deed of Trust ("DOT") naming Plaintiffs and a non-party individual, Emma De

24

Asis, as Joint Tenant owners of 67 Boxford Place, San Ramon, CA 94583 ("the Property"), recorded

25

in the Contra Costa County Recorder's Office as document number 2006-0013538-00 on January

26

13, 2006; (2) a Notice of Default ("NOD") on the Property recorded in the Contra Costa County

27

Recorder's Office as document number 2009-0119376-00 on May 26, 2009; (3) a Notice of

28

Trustee's Sale recorded with the Contra Costa County Recorder's Office as document number 2010-

UNITED STATES DISTRICT COURT
For the Northern District of California

0074798-00 on April 15, 2010; (4) a Trustee's Deed Upon Sale on the Property recorded with the Contra Costa County Recorder's Office as document number 2010-0097418-00 on May 14, 2010; (5) an Interspousal Grant Deed recorded in the Contra Costa County Recorder's Office as document number 2006-0013536-00 on January 13, 2006; (6) a Grant Deed recorded in the Contra Costa County Recorder's Office as document number 2006-0013537-00 on January 13, 2006; (7) an NOD recorded in the Contra Costa County Recorder's Office as document number 2007-0266433-00 on September 20, 2007; (8) a Notice of Rescission of the NOD recorded with the Contra Costa County Recorder's Office as document number 2007-0312932-00 on November 13, 2007; (9) a Substitution of Trustee recorded in the Contra Costa County Recorder's Office as document number 2009-0152154-00 on June 29, 2009; (10) an Assignment of DOT recorded in the Contra Costa County Recorder's Office as document number 2009-0168466-00 on July 16, 2009; (11) a Notice of Trustee's Sale recorded in the Contra Costa County Recorder's Office as document number 2009-0206739-00 on August 27, 2009; and (12) a Notice of Trustee's Sale recorded in the Contra Costa Recorder's Office as document number 2010-0119376-00 on April 15, 2010. (RJN 2:4-21, Dkt. #6; RJN 1:22-3:6, Dkt. #20[1].)

Good cause appearing, the Court hereby GRANTS Defendants' request that the Court take judicial notice of the above-listed documents.

### III. BACKGROUND

**A.    Judicially Noticed Facts**

On January 4, 2006, Plaintiffs and De Asis obtained a $560,000.00 mortgage loan from Defendant Fremont Investment & Loan ("Fremont"), secured by a DOT on the Property. (ACS Mot. 1:19-21, Dkt. #5; RJN Ex. C, Dkt. #20.) Fremont General Credit Corporation was listed as the trustee and Mortgage Electronic Registration Systems, Inc. ("MERS") was listed as the beneficiary. (RJN Ex. C, Dkt. #20.) Adjustable Rate and Balloon Payment Riders were attached to the DOT and executed by Plaintiffs and De Asis. *Id.*

---

[1]Because CLTC's RJN contains the same documents as ASC's, plus additional documents, the Court will refer to CLTC's RJN.

UNITED STATES DISTRICT COURT
For the Northern District of California

After Plaintiffs failed to make timely mortgage payments, First American Title Insurance Company requested, and the County Clerk recorded an NOD on May 26, 2009, stating that Plaintiffs were $96,368.21 in arrears.  (ASC Mot. 2:5-6, Dkt. #5; RJN Ex. F, Dkt. #20.)  When Plaintiffs failed to cure their default, First American Title Insurance Company requested, and the County Clerk recorded, a first Notice of Trustee's Sale on August 27, 2009, and a second on April 15, 2010.  (*Id.* at Exs. I, J; ASC Mot. 2:6-8, Dkt. #5.)  The trustee's sale took place on May 6, 2010.  (RJN Ex. K, Dkt. #20.)

**B.      Plaintiffs' Allegations**

In their complaint, Plaintiffs list the following entities as defendants and allege their involvement as follows: (1) Fremont (the original mortgage lender); (2) U.S. Pacific Loans, Inc. ("U.S. Pacific") (the original mortgage broker); (3) Deutsche Bank (successor holder of the DOT); (4) ASC (authorized loan servicing agent for Deutsche Bank); (5) Fremont General Credit Corporation (original mortgage trustee); (6) CLTC (original title company); (7) First American Title Insurance Company (successor trustee); and (8) Williams (realtor attempting to sell the Property). (Compl. ¶¶ 3-10.)

In actuality, and as it appears from the judicially noticed documents, Fremont was the original mortgage lender, Fremont General Credit Corporation was the original trustee, and MERS was the original beneficiary of the DOT.  (RJN Ex. C, Dkt. #20.)  TSS subsequently acted as agent for MERS and was then appointed trustee under the DOT.  *Id.* at Exs. D, G.  On July 9, 2009, MERS assigned Deutsche Bank all of its beneficial interest under the DOT, making Deutsche Bank the beneficiary.  *Id.* at Ex. H.  TSS recorded the Notices of Trustee's Sale, as the appointed trustee, and, following the sale, TSS transferred its interest in the property to Deutsche Bank.  *Id.* at Exs. I, J, K.

In their Complaint, Plaintiffs allege that each of the defendants' activities violated the Truth in Lending Act ("TILA"),15 U.S.C. ¶ 1601 *et seq.*, the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, *et seq.*, California Business and Professions Code section 17200, and multiple sections of the California Civil Code.  (Compl. ¶ 14.)  Plaintiffs allege that they obtained

3

UNITED STATES DISTRICT COURT
For the Northern District of California

the mortgage loan secured by a DOT on the Property on January 13, 2006[2], but that they never signed anything in front of a Notary Public and never recorded a signature or fingerprint in a notary's log, even though a notary signature appears on each loan and subsequent document. *Id.* at ¶ 20. Plaintiffs allege that they never met De Asis, the third Joint Tenant on the DOT, never signed any agreement to be connected with her, never saw her signature on any paperwork, and that she did not attend closing. *Id.* Plaintiffs further allege that they were advised that De Asis had the good credit to enable them to get the mortgage loan.[3] *Id.* The Court notes that Plaintiffs' signatures and initials appeared after De Asis' on each page of the loan documents.

Plaintiffs state that the terms of the transaction with Fremont were not made clear to them, that credit was extended based only upon their stated income and a credit report, that "Defendants" knew that they could not qualify for or afford to repay such loans, and that each Defendant "who has participated in, been assigned or been transferred Rights, or hold a position or interest under this loan agreement" failed to perform required due diligence and as a result, each Defendant "now holds an interest in a loan that was improperly handled from its inception." *Id.* at ¶¶ 21-26.

## C. Procedural Background

On May 21, 2010, Plaintiffs filed a complaint in Superior Court for the County of Contra Costa alleging the following purported causes of action: (1) Declaratory Relief; (2) Injunctive Relief; (3) Determine Nature, Extent and Validity of Lien; (4) Contractual Breach of Implied Covenant of Good Faith and Fair Dealing; (5) Violations of "TILA"; (6) Violations of "RESPA"; (7) seven violations of the California Civil Code; (8) Rescission; (9) Fraud; (10) Unfair and Deceptive Acts and Practices; (11) Breach of Fiduciary Duty; (12) Unjust Enrichment; (13) Unconscionability; (14) Violation of California Business and Professions Code Section 17200; (15) Quiet Title; (16)

---

[2]The actual date as evidenced by the DOT is January 4, 2006. (RJN Ex. C, Dkt. #20.)

[3]At the September 30, 2010 hearing, Plaintiffs informed the Court that their realtor, Betty Ong, told them she could represent De Asis and sign her name on the loan documents. Ong told Plaintiffs De Asis was a friend of hers and that De Asis had the credit to help them purchase the home.

4

UNITED STATES DISTRICT COURT
For the Northern District of California

1    Wrongful Foreclosure; and (17) Slander of Title[4].  (Removal Not. Ex. A, Dkt. #1.)[5]  All told,

2    Plaintiffs numbered twenty-three causes of action.

3           On July 6, 2010, ASC removed the action to this Court pursuant to 28 U.S.C. §§ 1441 and

4    1446.  (Dkt. #1.)  On July 13, 2010, ASC filed its motion to dismiss.  (Dkt. #5.)  Defendants

5    Deutsche Bank National Trust Company ("Deutsche Bank"), Signature Group Holdings, Inc.

6    (successor in interest to Fremont Investment & Loan and Fremont General Credit Corporation)

7    ("Signature"), Trustee Services Solutions, Inc. (formerly known as First American Loanstar Trustee

8    Services, Inc. and erroneously sued as First American Title Insurance Company) ("TSS"), and

9    Stephen R. Williams (collectively, "Joining Defendants") joined in ASC's motion to dismiss.  (Dkt.

10   ##9, 11, 15, 17.)  CLTC filed a separate motion to dismiss on August 5, 2010.  (Dkt. #19.)

11          On August 13, 2010, Plaintiffs filed identical oppositions to Defendants' motions to dismiss.

12   (Dkt. ##25, 26.)[6]  On August 19, 2010 ASC filed a reply (Dkt. #27), and on September 14, 2010

13   CLTC filed a reply (Dkt. #34).

14                              **IV.  DISCUSSION**

15          In its motion, Defendant ASC claims that Plaintiffs have failed to state any viable claims

16   against Defendants.  (ASC Mot. 1:15-16, Dkt. #5.)  ASC argues that each of Plaintiffs' claims are

17   either preempted, barred, include a statute of limitations that has tolled, or are insufficiently pled.

18   *Id.* at 1:8-16.  Accordingly, ASC requests that the Court dismiss all claims against Defendants

19   pursuant to Rule 12(b)(6).  *Id.*  Similarly, CLTC contends that Plaintiffs' complaint is defective

20   because it fails to distinguish the actions of one defendant from another, and thus no defendant is on

21   notice as to which claims are directed against it.  (CLTC Mot. 2:7-8, Dkt. #19.)  Further, CLTC

22   asserts that, as Plaintiffs' escrow agent, the facts pled in Plaintiffs' complaint fail to state a cause of

23   action against it for any action arising out of a transaction in which CLTC was involved.  *Id.* at 2:12-

24   ─────────────

25          [4]This cause of action is pled in the title of the complaint but not in the body of the complaint.

26          [5]Exhibit A to the Notice of Removal is Plaintiffs' complaint and the Court will hereinafter
     refer to it as such.

27

28          [6]When referencing Plaintiff's Opposition, the Court will cite to Dkt. #26.

15.

In their Opposition, Plaintiffs argue that they have adequately pled their claims and re-allege all of the claims included in their Complaint.  (Dkt. #26.)

**A.      Legal Standard**

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), a defendant may seek dismissal of a complaint for failure to state a claim upon which relief can be granted.  Rule 8, which provides the standard for judging whether such a cognizable claim exists, requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss, a complaint need not provide detailed factual allegations.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).  However, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," not just conceivable.  *Id.* at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  In addition, the court may consider a matter that is properly the subject of judicial notice, such as matters of public record.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Finally, in reviewing a motion to dismiss, the court may also consider documents attached to the complaint.  *Parks School of Business, Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

*Pro se* pleadings are also subject to Rule 8(a)(2).  *Brazil v. U.S. Dept. of Navy*, 66 F.3d 193, 199 (9th Cir. 1995).  However, pleadings of *pro se* litigants are held to even less rigid standards than those drafted by attorneys.  *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).  "Courts have a duty to construe pro se pleadings liberally, including pro se motions as well as complaints."  *Bernhardt v. Los Angeles County*, 339 F.3d 920, 925 (9th Cir. 2003).  While a *pro se* plaintiff's pleadings will be construed with great leeway, "those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong."  *Brazil*, 66 F.3d at 199.  "When there are well-pleaded factual

1  allegations, a court should assume their veracity and then determine whether they plausibly give rise

2  to an entitlement to relief." *Ashcroft*, 129 S.Ct. at 1950.

3      If the court dismisses a complaint pursuant to Rule 12(b)(6), it "should grant leave to amend

4  even if no request to amend the pleading was made, unless it determines that the pleading could not

5  possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.

6  2000).  In making this determination, the court should consider factors such as "the presence or

7  absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous

8  amendments, undue prejudice to the opposing party and futility of the proposed amendment."

9  *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).  Leave to amend need not be

10  given if a complaint, as amended, is subject to dismissal.  *Id.*

11  **B.    Application to the Case at Bar**

12      The Court shall review each of Plaintiffs' claims in turn.

13      1.    Plaintiffs' TILA Claim

14      In their fifth cause of action, Plaintiffs allege that all Defendants violated TILA "by failing to

15  provide Plaintiffs with accurate material disclosures required under TILA" and not fully informing

16  them of the effects of the loan terms or offering more than one loan product.  (Compl. ¶ 68.)

17  Plaintiffs further allege that Fremont failed to provide accurate disclosures regarding the finance

18  charges on their loan.  *Id.* at ¶ 70.

19      In their motion to dismiss, ASC and the Joining Defendants argue that Plaintiffs' TILA claim

20  is time-barred and that TILA's provisions are inapplicable to each[7] of them.  (ASC Mot. 4:14, 5:19-

---

22      [7]Signature also stated separately:
23      On the grounds that the arguments asserted by ASC are equally applicable to
       Signature as to the arguments based on (i) statutes of limitations, (ii) preemption, (iii)
24      that California Civil Code section 1632(b)(2) does ot apply to loans secured by real
       property, (iv) failure to meet pleading standards, (v) that the 'holder of the note'
25      theory is not a basis for recovery, (vi) that breach of the covenant of good faith and
       fair dealing claims are inappropriate except in insurance cases, (vii) that a lender does
26      not owe its borrower a fiduciary duty, (viii) that the equitable claims are barred by
       Plaintiffs' failure to tender the arrearages owed on the subject loan, and (ix) that
27      Plaintiffs' claims for declaratory and injunctive relief are remedies, not claims for

20, Dkt. #5.)

In response, Plaintiffs offer many citations to case law but no argument, except to say that they have stated a claim for TILA violations. (Pls.' Opp'n 15:12-18:10, Dkt. #26.) It appears from their complaint that Plaintiffs seek both damages and cancellation of the loan for the alleged TILA violations. (Compl. ¶ 72, 75.)

"Violations of TILA requirements give rise to remedies of both rescission and damages." *Stewart v. Mortgage Electronic Registration Systems, Inc.*, 2010 WL 1054384, at *7 (D. Or. 2010). TILA provides that the right of rescission expires "three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor . . . ." 15 U.S.C. § 1635(f); *Semar v. Platte Valley Federal Savings & Loan Assoc.*, 791 F.2d 699, 704 (9th Cir. 1986) (borrowers entitled to a three-year period during which to rescind.) "'[C]onsummation' occurs when a borrower signs the loan documents and becomes obligated to pay . . . ." *U.S. v. Petroff-Kline*, 557 F.3d 285, 296 (6th Cir. 2009). Failure of the lender to notify the borrower that he or she has three days following the transaction to rescind entitles the borrower to a three-year rescission period. *See Semar*, 791 F.2d at 704; 15 U.S.C. §1635(a). Regulation Z, also known as the Truth in Lending regulation, is TILA's implementing regulation and provides that where "the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. § 226.23(a)(3).

Additionally, a plaintiff seeking damages under TILA must bring suit within one year from the occurrence of the alleged violations. 15 U.S.C. § 1640(e); *see also Hubbard v. Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (refusing to toll the statute of limitations based on finding that the plaintiff could have compared her loan contract to the lender's initial disclosures and TILA's

relief. (Dkt. #11.)

**UNITED STATES DISTRICT COURT**
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

1  requirements directly after obtaining the loan.)

2      Regarding Plaintiffs' purported claim for rescission, the loan documents were signed on

3  January 4, 2006.  (RJN Ex. C, Dkt. #20.)  All of Plaintiffs' interest in the Property was transferred

4  upon consummation of the Trustee's Sale on May 6, 2010.  *Id.* at Ex. K.  Thus, consummation of the

5  loan contract occurred first in time and the three year period during which Plaintiffs were entitled to

6  seek rescission extended until January 4, 2009.  As Plaintiffs did not file suit until May 21, 2010,

7  their claim for rescission under TILA is time-barred.

8      Regarding Plaintiffs' damage claim under TILA, the alleged failure to disclose TILA

9  documents would have occurred no later than 2006, when Plaintiffs entered into the loan.  Four

10  years have since passed.  Thus, Plaintiffs also cannot state a claim for damages, or otherwise, under

11  TILA.

12      As Plaintiffs' TILA claims are time-barred, any amendment to the claims would also be

13  subject to dismissal.  Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND ASC and

14  CLTC's[8] motions to dismiss Plaintiffs' TILA claims.

15      2.    Plaintiffs' RESPA Claims

16      Plaintiffs allege RESPA violations against "all Defendants"; however, only Fremont and

17  U.S. Pacific are named in the complaint.  (Compl. ¶ 80.)  Plaintiffs allege that Fremont and U.S.

18  Pacific were paid unearned fees in the form a Yield Spread Premium ("YSP"), which increased

19  Plaintiffs' interest rate and created a windfall for Fremont and U.S. Pacific.  *Id.*  Plaintiffs state that a

20  YSP is earned when the broker increases the amount the borrower pays on interest, which increases

21  both the interest rate and the monthly payment.  *Id.*  According to Plaintiffs, it takes the borrower

22  three years to repay the YSP, but once the three-year repayment period ends, the interest rate does

23  not drop; the borrower continues to pay the same interest rate and the lender reaps the benefits.  *Id.*

24  Plaintiffs allege that "Defendants" explained the YSP to them as a credit for closing costs, that no

25

26  ───────────────

27      [8]Because Plaintiffs' TILA claims are all time-barred, the Court need not address CLTC's
    arguments regarding dismissal of Plaintiffs' TILA claims.  Further, the Court need not address

28  Defendants' arguments that TILA's provisions do not apply to them.

9

UNITED STATES DISTRICT COURT
For the Northern District of California

1   separate agreements regarding the YSP were ever provided to them, and that Fremont and U.S.

2   Pacific were unjustly enriched as a result.  *Id.* at ¶¶ 79-80.[9]  Plaintiffs maintain that Defendants

3   violated RESPA and caused them to suffer damages in an amount not yet ascertained because the

4   payments to the mortgage broker and to the lender were misleading, deceptive, fraudulent, and were

5   designed to

6    create a windfall.  *Id.* at ¶¶ 81-82.

7          In its Motion, ASC[10] contends that Plaintiffs' RESPA claim is time-barred and that the

8   complaint pleads no facts which would support equitable tolling.  (ASC Mot. 7:1-5, Dkt. #5.)

9   Further, ASC maintains that there is no factual basis in the complaint for claims against it directly.

10  *Id.* at 7:6-7.  CLTC also argues that Plaintiffs' claims under RESPA are barred by the statute of

11  limitations.  (CLTC Mot. 6:14-20, Dkt. #19.)  CLTC contends that RESPA applies only to creditors

12  or lenders, and because it did not act in that capacity, Plaintiffs cannot state a RESPA claim against

13  CLTC.  *Id.* at 6:21-7:2.

14         In response, Plaintiffs contend that "lenders, such as Defendants[,] are required" to disclose

15  to the borrower the escrow costs involved in the loan transaction.  (Pls.' Opp'n 25:24-25, Dkt. #26.)

16  Plaintiffs maintain that they have complied with the requirements of Rule 8 and have stated a

17  RESPA claim against Defendants, though they are unclear as to whether Defendants received

18  kickbacks or referral fees in violation of RESPA.  *Id.* at 26:7-8.  Plaintiffs argue that the statute of

19  limitations on this claim was tolled because facts surrounding the loan transaction were hidden from

20  them and continue to be hidden.  *Id.* at 26:24-28.

21         RESPA's prohibition against kickbacks provides that "[n]o person shall give and no person

22  shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or

23  _____

24         [9]Plaintiffs follow paragraph 80 in their complaint with an additional paragraph 79 and 80,

25  which the Court refers to in the last citation.  The paragraphs are sequentially numbered from there
    on.

26         [10]For purposes of clarity, on each of Plaintiffs' claims, the Court will first address ASC's

27  motion to dismiss in which Deutsche Bank, Signature, TSS, and Williams joined, and will then
    discuss CLTC's motion to dismiss, unless it is necessary only to discuss one.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

1   otherwise, that business incident to or a part of a real estate settlement service involving a federally

2   related mortgage loan shall be referred to any person."  12 U.S.C. § 2607(a).  Further, "[n]o person

3   shall give and no person shall accept any portion, split, or percentage of any charge made or

4   received for the rendering of a real estate settlement service in connection with a transaction

5   involving a federally related mortgage loan other than for services actually performed."  *Id.* at §

6   2607(b).  However, any actions brought under 12 U.S.C. § 2607 must be brought within one year

7   from the date of the alleged violation.  12 U.S.C. § 2614.

8        Here, Plaintiffs' loan was executed on January 4, 2006.  (RJN Ex. C, Dkt. #20.)  The instant

9   action was filed May 21, 2010.  (Dkt. #1.)  Plaintiffs allege RESPA violations that would have

10   arisen out of the origination of the loan, over four years prior to the filing of this lawsuit.  In order

11   for Plaintiffs' RESPA claims to survive, they must establish that the one-year statute of limitations

12   was equitably tolled.  The doctrine of equitable tolling will only apply where a plaintiff can show

13   that he or she exercised all due diligence to obtain vital information bearing on the existence of his

14   or her claim.  *Lucero v. Diversified Investments Inc.*, 2010 WL 3463607, at *3 (S.D. Cal. 2010).

15   Plaintiffs have not alleged any facts which would support an inference that equitable tolling is

16   appropriate.  Plaintiffs claim that they were told the YSP was a credit for closing costs.  (Compl. ¶

17   79.)  However, they did not attempt to investigate this claim, which they should have done if they

18   did not understand it or felt they were being misled.  Diligent consumers would have investigated

19   further prior to signing loan documents, and thus, Plaintiffs' claims are insufficient to support the

20   application of equitable tolling.  *Lucero*, 2010 WL 3463607, at *3 (citing *Santa Maria v. Pac. Bell*,

21   202 F.3d 1170, 1178 (9th Cir. 2000).  Based on the foregoing, the Court finds that Plaintiffs' RESPA

22   claims are time-barred.  Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND both

23   motions to dismiss Plaintiffs' RESPA claims.

24        3.    Plaintiffs' Seventh through Tenth and Thirteenth Causes of Action

25        In causes of action seven through ten and thirteen, Plaintiffs allege numerous violations of

26   the California Civil Code.  First, Plaintiffs allege that all Defendants violated California Civil Code

27   section 1916.7(b)(2), which provides in pertinent part that changes in interest and monthly payments

28

11

"shall not occur more often than twice during any annual period and at least six months shall elapse between any two changes."  Additionally, "[t]he rate of interest and monthly payments shall not change during the first semiannual period.  The amount of any increase in monthly payment shall not exceed 7.5 percent annually."  Cal. Civ. Code § 1916.7(b)(2).  Plaintiffs state that their mortgage, an Option ARM mortgage, is tied to an index that can change monthly, and as the index changes, so does the interest rate.  (Compl. ¶ 85.)  Plaintiffs allege that the Adjustable Rate Mortgage Note disclosed to them that the payments would adjust monthly and thus, Defendants violated the civil code.  *Id.* at ¶ 86.

Next, Plaintiffs allege that all Defendants violated California Civil Code section 1920(a), which provides that in determining whether to adjust interest rates or monthly payments, there must be standards which "consider factors which can reasonably be deemed to affect the ability of borrowers to meet their mortgage obligations."  Plaintiffs maintain that their loan was based only on a credit score, stated income, and a belief that the property would continue to increase in value, and that there was no consideration of Plaintiffs' ability to repay the loan.  (Compl. ¶ 90.)  They further allege that W-2s and other income information was available to determine Plaintiffs' ability to repay the loan, but it was not used.  *Id.* at ¶ 91.

In their ninth cause of action, Plaintiffs allege violations of California Civil Code section 1916.7(b)(4), which provides that "[w]henever any monthly installment is less than the amount of interest accrued during the month with respect to which the installment is payable, the borrower shall have the option to . . . increase the monthly installment in an amount which at least covers the increase in interest" and/or "have the difference added to the principal of the loan as of the due date of the installment and thereafter shall bear interest as part of the principal."  Cal. Civ. Code § 1916.7(b)(4).  However, "[i]n no instance shall the difference which is added to the principal be an amount which causes the resulting loan-to-value ratio to exceed the loan-to-value ratio at the time of loan origination."  *Id.*  Plaintiffs allege that their loan is a negative amortizing loan and subject to the loan value being greater than the original loan value.  (Compl. ¶ 95.)  They further allege that as each minimum payment is made, the balance increases, increasing the loan to value ratio and thus

12

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1  violating the above statute.  *Id.*

2      Next, Plaintiffs allege that all Defendants violated California Civil Code section 1916.7(c),

3  which provides that "[a]n applicant for a loan originated pursuant to the provisions of this section

4  must be given, at the time he or she requests an application, a disclosure notice" which complies

5  with the provisions of the section.  Plaintiffs allege they were not provided with such a form at any

6  time during the processing of the loan.  (Compl. ¶ 100.)

7      In their thirteenth cause of action, Plaintiffs allege that all Defendants violated California

8  Civil Code section 1916.7(b)(8), which provides that loans made pursuant to the section must permit

9  the borrower to "prepay the loan in whole or in part without a prepayment charge at any time, and

10  no fee or other charge may be required by the lender of the borrower as a result of any change in the

11  interest rate or the exercise of any option or election extended to the borrower pursuant to this

12  section."  Plaintiffs allege that there was a three-year prepayment penalty incorporated in their loan,

13  and thus that Defendants have violated the above section.  (Compl. ¶ 118.)

14      ASC argues that the above sections pled by Plaintiffs are preempted by the federal

15  Alternative Mortgage Transactions Parity Act, 12 U.S.C. §§ 3801 *et seq.* ("AMTPA").  (ASC Mot.

16  8:5-7, Dkt. #8.)  Specifically, ASC contends that AMTPA's implementing regulations indicate that

17  the civil code sections governing mortgage disclosures are preempted by federal law.  *Id.* at 8:26-

18  9:3.  ASC also argues that only the original lender can be at fault under either the state or federal

19  statutory scheme, and thus, Plaintiffs' claims should be dismissed.  *Id.* at 9:4-7.  CLTC argues that

20  because it only served as the escrow agent and was not the original lender, Plaintiff cannot state a

21  claim against it.  (CLTC Mot. 7:12-17, Dkt. #19.)

22      Plaintiffs offer no opposition.

23      Congress enacted AMTPA after finding that "increasingly volatile and dynamic changes in

24  interest rates ha[d] seriously impared [sic] the ability of housing creditors to provide consumers with

25  fixed-term, fixed-rate credit secured by interests in real property."  12 U.S.C. § 3801(a).  Congress

26  noted that the Office of Thrift Supervision ("OTS"), among other agencies, had "recognized the

27  importance of alternative mortgage transactions and ha[d] adopted regulations authorizing federally

28

13

chartered depository institutions to engage in alternative mortgage financing." *Id.* Congress enacted AMPTA with a goal of "eliminat[ing] the discriminatory impact that those regulations have upon non[-]federally chartered housing creditors." *Id.* at § 3801(b). AMTPA authorizes non-federally chartered housing creditors to "make, purchase, and enforce alternative mortgage transactions" when those transactions are made "in accordance with regulations governing alternative mortgage transactions as issued by the Director of the [OTS]." *Id.* at § 3803(a). In a section entitled "Preemption of State constitutions, laws, or regulations," AMPTA provides that "[a]n alternative mortgage transaction may be made by a housing creditor in accordance with this section, notwithstanding any State constitution, law, or regulation." *Id.* at § 3803(c).

AMTPA's effect "is to permit a non-federally chartered housing creditor to make a loan either under state law, in which case the loan transaction remains subject to the full range of state regulations, or under federal law, in which case the loan transaction becomes subject to federal regulations governing similar loans by federally chartered lending institutions." *National Home Equity Mortg. Ass'n v. Face*, 239 F.3d 633, 635-36 (4th Cir. 2001). AMTPA's implementing regulation, 12 C.F.R. § 560.220, provides that an alternative housing creditor offering loan products, such as the adjustable rate loan here, must follow 12 C.F.R. §§ 560.35 and 560.210 when making a non-federally charted loan, notwithstanding any state law or regulation. Those regulations provide the disclosures and notice requirements when making such a loan, and also govern adjustments to loan payments. 12 C.F.R. §§ 560.35, 560.210. AMTPA provides that "conflicting state laws governing 'alternative mortgage transactions' are preempted where those transactions comply with relevant OTS regulations." *Hafiz v. Greenpoint Mortg. Funding, Inc.*, No. C 09-01729 WHA, 652 F. Supp. 2d 1039, 1047 (N.D. Cal. 2009). Thus, where state statutory law is in direct conflict to the requirements of AMTPA and its implementing regulations, federal law prevails. *Id.*

Here, it appears that AMTPA and its implementing regulations preempt Plaintiffs' state law claims. 12 C.F.R. §§ 560.35 and 560.210 govern disclosure and notice requirements in making alternative mortgage transactions, and also govern adjustments to loan payments, and the California Civil code sections that Plaintiffs claim have been violated do as well. *But cf. Quicken Loans, Inc. v.*

14

UNITED STATES DISTRICT COURT
For the Northern District of California

*Wood*, 449 F.3d 944, 951-53 (9th Cir. 2006) (finding no preemption because the California statutes pled by the plaintiff did not exclusively apply to alternative mortgage transactions and did not restrict a creditor's ability to enter into such a transaction). "Alternative, conflicting, or more rigorous disclosure requirements would interfere with housing creditors' ability to enter into alternative mortgage transactions." *Hafiz*, 652 F. Supp. 2d at 1047. Plaintiffs have not alleged any facts which would indicate that their mortgage loan was made pursuant to the California Civil Code, rather than AMTPA's implementing regulations, and thus causes of action seven through ten and thirteen must fail. Moreover, because the both the state and federal laws apply to and regulate alternative mortgage transactions, Plaintiffs' state law claims are preempted by AMPTA.

Furthermore, AMPTA governs claims against housing creditors and therefore, the only proper Defendant in an action brought pursuant to AMPTA is a lender. In this case, Signature is the only lender. Plaintiffs, in their argument, have not provided sufficient evidence that Signature, the lender in this action, violated AMPTA. Therefore, the Court GRANTS WITH LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' seventh through tenth and thirteenth causes of action against Defendant Signature and GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiff's seventh through tenth and thirteenth causes of action against all other Defendants. The Court directs Plaintiffs to amend their complaint as to Defendant Signature ONLY if they can specifically allege a violation under AMPTA.

### 4. Plaintiffs' Eleventh Cause of Action

In their eleventh cause of action, Plaintiffs allege that all Defendants violated California Civil Code section 2079.16, which provides that listing and selling agents must also provide a disclosure notice describing the potential relationship between a consumer and a real estate agent.

ASC argues again that AMPTA preempts this section. (ASC Mot. 8:5-7, Dkt. #5.) CLTC argues that because California Civil Code section 2079 *et seq.* contemplates the duties of real estate brokers and salespersons, CLTC as an escrow agent must be dismissed. (CLTC Mot. 7:18-23, Dkt. #19.)

Plaintiffs offered no opposition. Regardless of that fact, as the section only lists the content

which is to appear on a form which must be supplied by the real estate broker or salesperson, it does not appear to provide sufficient information to meet the pleading requirements of Rule 12(b)(6) and therefore does not offer a viable private right of action. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motions to dismiss Plaintiffs' eleventh cause of action.

        5.     <u>Plaintiffs' Twelfth Cause of Action</u>

In their twelfth cause of action, Plaintiffs allege that all Defendants violated California Civil Code section 1632, which provides that "[a]ny person engaged in a trade or business who negotiates primarily in Spanish, Chinese, Tagalog, Vietnamese, or Korean, orally or in writing, in the course of entering into any of the following, shall deliver to the other party to the contract or agreement and prior to the execution thereof, a translation of the contract or agreement in the language in which the contract or agreement was negotiated, which includes a translation of every term and condition in that contract or agreement . . . ." The applicable "any of the following" section contemplated here is "[a] loan or extension of credit secured other than by real property, or unsecured, for use primarily for personal, family or household purposes." *Id.* at § (b)(2).

Plaintiffs allege that their native language is Tagalog and that they do not have strong reading comprehension skills in English. (Compl. ¶ 114.) Plaintiffs implicitly allege that Defendants violated this section by failing to provide a translation of their loan documents in Tagalog.

In its motion to dismiss, ASC contends that the above section is inapplicable because Plaintiffs did not allege that the *transactions* were negotiated in Tagalog by any defendant; they only allege that Plaintiffs' native language is Tagalog. (ASC Mot. 9:19-23, Dkt. #5.) Defendants contend that the statute only applies to loans or extensions of credit secured other than by real property, of which this loan was clearly not one. (*Id.* at 9:24-25; CLTC Mot. 8:2-5, Dkt. #19.) Finally, Defendants contend that there is a one-year statute of limitations which bars Plaintiffs' claims. (ASC Mot. 10:9-13, Dkt. #5; CLTC Mot. 8:5-6, Dkt. #19.)

California Civil Code section 1632 does not expressly provide a statute of limitations;

16

1   however, it has been interpreted as one year from the date of origination of the loan in question.

2   *Delino v. Platinum Comm. Bank*, 628 F. Supp. 2d 1226, 1234 (S.D. Cal. 2009).  The Court thus finds

3   that Plaintiffs' claim is barred by the one-year statute of limitations.  Further, the Court finds that

4   Plaintiffs misinterpreted the code because it applies to situations in which the loan is negotiated

5   primarily in another language, not where the consumer happens to have another language as their

6   native tongue.

7       Accordingly, the Court finds that Plaintiffs have failed to state a claim and thus GRANTS

8   WITHOUT LEAVE TO AMEND Defendants' motions to dismiss Plaintiffs' twelfth cause of action.

9       6.    Plaintiffs' Fraud Claim

10      In their fifteenth cause of action, Plaintiffs alleges that all Defendants are liable for fraud.

11  Plaintiffs claim that Defendants intentionally, willfully and wantonly engaged in acts with the

12  purpose of deceiving Plaintiffs and inducing them into a loan.  (Compl. ¶ 126.)  Plaintiffs maintain

13  that Defendants engaged in unlawful suppression of facts.  *Id.* at ¶ 128.  Plaintiffs allege that they

14  never signed anything in front of a notary and that the fact that they did not appear before a notary

15  public constitutes misleading, fraudulent behavior on Defendants' part.  *Id.* at ¶ 129.  Plaintiffs

16  further allege Defendants' fraudulence is evidenced by the fact they never met De Asis.  *Id.*  Finally,

17  Plaintiffs allege that they justifiably relied on Defendants' deception, which was the actual and

18  proximate cause of their damages.  *Id.* at ¶ 130.

19      Defendants contend that Plaintiffs have not alleged any specifics as to the elements of fraud.

20  (ASC Mot. 14:21, Dkt. #5; CLTC Mot. 9:19-22, Dkt. #19.)  Additionally, Defendants contend that

21  none of them were involved at the inception of the loan, and thus that Plaintiff cannot state a fraud

22  claim arising out of the origination of the loan against them.  (ASC Mot. 14:4-6, Dkt. #5; CLTC

23  Mot. 9:9-10, Dkt. #19.)

24      In California, the essential elements of a claim for fraud are "(a) a misrepresentation (false

25  representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

26  defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *In re Estate of*

27  *Young*, 160 Cal. App. 4th 62, 79 (2008) (citations omitted).  The statute of limitations  for an action

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

17

1    grounded in fraud is three years.  Cal. Civ. Code § 338(d).

2         Under the heightened pleading requirements for claims of fraud under Rule 9(b), "a party

3    must state with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b).  A

4    plaintiff must include the "who, what, when, where, and how" of the fraud.  *Vess v. Ciba-Geigy*

5    *Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *In re GlenFed, Inc. Securities*

6    *Litigation*, 42 F.3d 1541, 1548 (9th Cir. 1994) (overruled on unrelated grounds).  Additionally,

7    "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform

8    each defendant of his alleged participation in the fraud."  *Ricon v. Reconstrust*, 2009 WL 2407396,

9    at *3 (S.D. Cal. Aug. 4, 2009) (quoting *DiVittorio v. Equidyne Extractive Indus*., 822 F.2d 1242,

10   1247 (2d Cir. 1987)).

11        As it finds the issue dispositive, the Court shall first address whether Plaintiff's fraud claims

12   are time barred.  "[A]s a general rule the limitations period starts at the consummation of the

13   transaction."  *King*, 784 F.2d at 915.  Here, Plaintiffs entered into the loan agreement in January

14   2006, yet filed their complaint in May 2010.  As more than three years elapsed before Plaintiffs

15   brought this action, the Court initially finds that their claims are time-barred.

16        Plaintiffs do not oppose Defendants' motions to dismiss their fraud claims.  However, as

17   Plaintiffs are in *pro per*, the Court will consider *sua sponte* whether they have alleged facts

18   sufficient to indicate whether equitable tolling is appropriate.  "Equitable tolling may be applied if,

19   despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of

20   his claim."  *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  Equitable tolling

21   "focuses on excusable delay by the Plaintiff."  *Id.*

22        Here, the Court finds that Plaintiffs have not alleged facts sufficient to invoke equitable

23   tolling.  Plaintiffs have also not properly alleged a fraud claim.  Because Plaintiffs are in *pro per* and

24   likely not aware of Rule 9(b)'s specificity requirements, the Court will GRANT WITH LEAVE TO

25   AMEND Defendants' motion to dismiss Plaintiffs' fraud claim.  However, the Court directs

26   Plaintiffs to amend their complaint as to their fraud claim ONLY if they can specifically allege the

27   "who, what, when, where, and how" of the fraud, and if they can plead facts which would show that

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

18

1    equitable tolling of the three year statute of limitations is proper.  *Vess*, 317 F.3d at 1106; *Santa*

2    *Maria*, 202 F.3d 1170 at 1178.

3

4         7.    Plaintiffs' Unfair Competition Law Claims

5         In their sixteenth and twentieth causes of action, Plaintiffs invoke California Business and

6    Professions Code § 17200, alleging that the lenders failed to disclose key loan terms and

7    consequences of loan terms.  (Compl. ¶¶ 133-35, 152-56.)  California Business and Professions

8    Code section 17200 is California's Unfair Competition Law ("UCL"), which provides that "unfair

9    competition shall mean and include any unlawful, unfair or fraudulent business act or practice . . . ."

10        All Defendants challenge Plaintiffs' UCL claims, arguing that Plaintiffs have failed to allege

11   a claim against them under either the unlawful, unfair, or fraudulent prong.  (ASC Mot. 12:10-14,

12   Dkt. #5; CLTC Mot. 10:10-11, Dkt. #19.)

13        Plaintiffs fail to respond to any of the above arguments.

14             a.    *The Unlawful Prong*

15        In order to state a claim under the UCL's unlawful prong, a plaintiff must predicate their

16   claim upon a violation of a distinct state or federal law.  *Webb v. Smart Document Solutions, LLC*,

17   499 F.3d 1078, 1082 (9th Cir. 2007).  In their sixteenth cause of action, Plaintiffs allege Defendants'

18   "deceptive and unfair methods of preying upon Plaintiffs" and list a summary of each cause of

19   action alleged throughout the complaint.  (Compl. ¶ 132.)

20        Defendants maintain that because Plaintiffs have failed to allege any viable statutory claims,

21   their "unlawful" claim does not pass muster.  (ASC Mot. 10:24-25, Dkt. #5.)  The Court must agree.

22   As Plaintiffs are unable to state a valid statutory claim, they are unable to state a claim under the

23   UCL's unlawful prong.

24             b.    *The Fraud Prong*

25        Defendants contend that because Plaintiffs' fraud prong is not pled with sufficient

26   specificity, they cannot state a UCL fraud claim.  *Id.* at 11:1-2.  The elements and heightened

27   pleading requirements of a claim for fraud are discussed above.  (*See* Sec. B.6.)  The Court agrees, at

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

least for now, that if Plaintiffs are unable to allege a fraud claim, they cannot, by definition, have a

UCL fraud claim.  However, if Plaintiffs choose to re-file an amended complaint that includes a

viable fraud claim, they may be able to plead a UCL fraud claim if they can specifically allege the

"who, what, when, where, and how" of the fraud.

        *c.*       *The Unfair Prong*

      The Ninth Circuit recognizes two competing tests to establish unfairness sufficient to satisfy

the final prong of a UCL claim.  *Lozano v. AT&T Wireless Services, Inc.*, 504 F.3d 718, 736 (9th

Cir. 2007).  In *Motors, Inc. v. Times Mirror Co.*, the court held that it is necessary to "weigh the

utility of the defendant's conduct against the gravity of the harm to the alleged victim" in order to

determine whether a practice is unfair in nature.  *Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d

735, 740 (1980).  The second test, set out in *Cel-Tech Communications, Inc. v. Los Angeles Cellular

Telephone Co.*, requires that any finding of unfairness "be tethered to some legislatively declared

policy."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163,

186 (1999).

      In this case, Plaintiffs have failed to present sufficient evidence to support a finding of

unfairness under either the balancing test in *Motors, Inc.* or the alternative *Cel-Tech* test.  There

have been no facts presented that suggest Defendants lacked justification for their actions or to

demonstrate the gravity of harm to Plaintiffs, making a determination under *Motors, Inc.* impossible.

Moreover, because all of the statutory claims in this action have failed, Plaintiffs have not

established that Defendants violated any legislative policy, and therefore have not met the

requirement to state an unfair UCL claim under *Cel-Tech*.  Accordingly, Plaintiffs have failed to

allege a violation of the unfair prong of California's UCL law.

      Considering Plaintiffs' status as *pro se* litigants, the Court will afford them an opportunity to

amend their complaint to state facts which would properly allege a violation of the unfair prong of

California's UCL, as well as the fraud prong.  Accordingly, the Court GRANTS WITH LEAVE TO

AMEND Defendants' motion to dismiss Plaintiffs' UCL claims.

      8.     <u>Plaintiffs' Third Cause of Action</u>

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

In their third cause of action, titled "Determine Nature, Extent and Validity of Lien under California Commercial Code section 9313[,]" Plaintiffs allege that the DOT is voidable because there is no enforceable underlying promissory note for the DOT to secure. (Compl. ¶ 54.) Plaintiffs claim that all Defendants violated California Commercial Code section 9313 by not possessing the original note on the Property, and thus never perfecting an interest in the Property. *Id.* at ¶¶ 56, 57.

Defendants contend that this is an attempt by Plaintiffs to "resurrect the infamous and oft-overruled 'holder of the note theory.'" (ASC Mot. 12:18-20, Dkt. #5.) Defendants interpret Plaintiffs' complaint as asserting that the DOT is void because its holder is not in possession of the original promissory note, and argue that California law does not require possession of the original note as a precondition to non-judicial foreclosure. *Id.* at 12:20-24.

Plaintiffs offer no opposition.

The named trustee under the DOT has the right to initiate non-judicial foreclosure proceedings, and California law does not require possession of the note as a precondition to this right. *Hafiz*, 652 F. Supp. 2d at 1043. Thus, "Plaintiffs entirely misstate[ ] the law in alleging that [D]efendants must present a note in order to foreclose under the deed of trust." *Id.* Accordingly, the Court finds that Plaintiffs have failed to state a claim with their third cause of action and GRANTS WITHOUT LEAVE TO AMEND Defendants' motions to dismiss this claim.

    9.    <u>Plaintiffs' Fourth Cause of Action</u>

In their fourth cause of action, Plaintiffs allege violations of the covenant of good faith and fair dealing, stating that the terms of the loan imposed upon Defendants a duty of good faith and fair dealing. (Compl. ¶¶ 60, 61.)

Defendants argue that the covenant of good faith and fair dealing does not apply in this case because the contract at issue is not for insurance. (ASC Mot. 13:15-16, Dkt. #5.) Plaintiffs offer no substantive opposition to ASC's argument.

The California Supreme Court has held that "the tort of breach of the covenant of good faith and fair dealing applies only in the context of insurance contracts." *Harris v. Wachovia Mortg., FSB*, 185 Cal. App. 4th 1018, 1023 (2010) (*citing Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.

UNITED STATES DISTRICT COURT
For the Northern District of California

4th 85, 102 (1995)).  Plaintiffs' claims are based on a contract for property and as such are improper

under *Harris*.  Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants'

motion to dismiss Plaintiffs' fourth cause of action.

10. <u>Plaintiffs' First and Second Causes of Action</u>

Plaintiffs first and second causes of action are for declaratory and injunctive relief.  First,

Plaintiffs ask the Court to declare the sale of the Property void and unlawful because Defendants did

not comply with UCL, TILA, RESPA, and the California Civil Code, and thus that Defendants did

not have the right to foreclose.  (Compl. ¶¶ 44, 45.)  Next, Plaintiffs seek an order enjoining

Defendants from "further alienating, selling, transfering [sic], changing and illegally re-titling the

Subject Property . . . ."  *Id.* at ¶ 50.

Defendants contend that neither injunctive nor declaratory relief are independent causes of

action, and because Plaintiffs' other claims are defective, these claims should be dismissed.  (ASC

Mot. 20:17-21:5, Dkt. #5; CLTC Mot. 4:4-20, Dkt. #19.)

Injunctive and declaratory relief are both remedies a party may request; however, neither

represent an independent cause of action.  *Cox Communications PCS, L.P. v. City of San Marcos*,

204 F. Supp. 2d 1272, 1283 (S.D. Cal. 2002); *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983)

(citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)).  Because the Court has

invalidated all of the claims upon which Plaintiffs could properly seek injunctive or declaratory

relief, their first and second causes of action must fail.  Accordingly, the Court GRANTS WITH

LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' first and second causes of action.

Plaintiffs may amend their complaint to include a request for declaratory or injunctive relief in their

Prayer for Relief, only if the amended complaint states a claim upon which this type of relief can

properly be granted; specifically, a UCL claim.

11. <u>Plaintiffs' Seventeenth Cause of Action</u>

In their seventeenth cause of action, Plaintiffs allege that all Defendants had fiduciary duties

to Plaintiffs and subsequently breached those duties by placing Plaintiffs in a loan on which their

broker should have know they would default.  (Compl. ¶¶ 138-140.)  Plaintiffs argue that

22

UNITED STATES DISTRICT COURT
For the Northern District of California

1   Defendants' execution of a loan that maximized profits for Defendants to Plaintiffs' detriment, and

2   their failure to provide material disclosures are claims sufficient to establish a breach of fiduciary

3   duty. *Id.*

4          ASC claims that Plaintiffs have failed to allege facts sufficient to establish the existence of a

5   fiduciary relationship. (ASC Mot. 16:3-7, Dkt. #5.) Without a fiduciary relationship, ASC

6   maintains, there can be no breach. *Id.* CLTC claims that, in the absence of an enforceable escrow

7   instruction or evidence that those instructions were breached, as the escrow holder, it owed no

8   fiduciary duty to Plaintiffs. (CLTC Mot. 12:25-27, Dkt. #19.)

9          Plaintiffs offer no opposition.

10         Defendants in this action range from lenders to loan servicers to trustees and beneficiaries

11  under the deed of trust. Plaintiffs advance no theory of fiduciary responsibility as to any of these

12  parties. Furthermore, no plausible theory to support this claim presents itself in prevailing law, as it

13  is well-settled that lenders and creditors are ordinarily not fiduciaries of borrower-customers.

14  *Nymark v. Heart Federal Savings and Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 (1991). "[B]efore a

15  person can be charged with a fiduciary obligation, he must either knowingly undertake to act on

16  behalf and for the benefit of another, or must enter into a relationship which imposes that

17  undertaking as a matter of law." *City of Hope Nat. Medical Center v. Genentech, Inc.*, 43 Cal. 4th

18  375, 386 (2008) (citing *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.

19  3d 197, 221 (1983)). Plaintiffs have failed to present evidence to show that Defendants knowingly

20  entered into a relationship that would establish a fiduciary duty, and case law affirms that no such

21  relationship generally exists between lenders and borrower-customers. Therefore, Plaintiffs have

22  not demonstrated that a fiduciary duty existed and, as a result, can not properly claim that

23  Defendants have committed a breach of such duty.

24         Furthermore, although an escrow holder may be considered an agent and fiduciary of the

25  parties to the escrow, "the agency created by the escrow is limited to the obligation of the escrow

26  holder to carry out the instructions of each of the parties to the escrow." *Summit Financial*

27  *Holdings, Ltd. v. Continental Lawyers Title Co.*, 27 Cal. 4th 705, 711 (2002). Therefore, "only if the

28

23

**UNITED STATES DISTRICT COURT**
For the Northern District of California

1   escrow holder fails to carry out an instruction it has contracted to perform, [will] the injured party

2   ha[ve] a cause of action for breach of contract." *Id.* In the instant case, Plaintiffs have not

3   established that CLTC contracted to carry out any instructions and therefore any claim of breach

4   must fail.

5       Because Plaintiffs have not provided sufficient evidence to support their claim of breach of

6   fiduciary duty by any Defendants, and because the law is clear that a plaintiff must establish such a

7   duty in order to properly claim a breach, the Court GRANTS WITHOUT LEAVE TO AMEND both

8   motions to dismiss Plaintiffs' seventeenth cause of action.

9           12.     Plaintiffs' Eighteenth Cause of Action

10      In their eighteenth cause of action, Plaintiffs allege that all Defendants have been unjustly

11  enriched by selling Plaintiffs a loan product which resulted in a forced sale of their home. (Compl.

12  ¶¶ 143-146.) Plaintiffs claim that the forced sale allowed Defendants to enjoy the benefits of the

13  transaction while simultaneously evading repercussions of their multiple breaches. *Id.*

14      Defendants claim that Plaintiffs fail to provide any factual allegations to support their claim

15  of unjust enrichment. (ASC Mot. 16:8-9, Dkt. #5.)

16      "The fact that one person benefits another is not, by itself, sufficient to require restitution."

17  *Monet v. Chase Home Fin., LLC*, No. C 10-0135 RS, 2010 WL 2486376, at *3 (N.D. Cal. June 16,

18  2010) (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 389 (2004)). Furthermore:

19          [A] plaintiff may seek restitution in equity, ordinarily in the form of a constructive
            trust or an equitable lien, where money or property identified as belonging in good
20          conscience to the plaintiff could clearly be traced to particular funds or property in
            the defendant's possession.
21
22  *Id.* (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002)) (internal

    quotations omitted).
23
24      Although Plaintiffs attempt to allege that the loan product Defendants issued to them was not

25  made in good conscience, the Court agrees with Defendants that Plaintiffs have failed to plead

    sufficient facts in support of this contention. Therefore, the Court GRANTS WITH LEAVE TO
26
    AMEND Defendants' motion to dismiss Plaintiffs' eighteenth cause of action. Plaintiffs may amend
27
    and re-file their complaint only if they can allege facts sufficient to establish Defendants were
28

1  unjustly enriched under the standard set forth in *Monet*.  Plaintiffs must allege facts which indicate

2  any defendant's receipt and unjust retention of a benefit, such as money or property belonging to

3  Plaintiffs which can be clearly traced to particular funds or property in any defendants' possession.

4  *Monet*, 2010 WL 2486376, at *3.

5              13.    Plaintiffs' Nineteenth Cause of Action

6         In their nineteenth cause of action, Plaintiffs allege, against all Defendants, that the loan

7  agreement and the trust deed are unconscionable and of no force or effect.  (Compl. ¶ 150.)

8  Specifically, Plaintiffs allege that Defendants acted deceptively, from an "unfair bargaining

9  position" and failed to adhere to the "applicable regulations, civil codes and federal standards."  *Id.*

10  Finally**,** Plaintiffs claim that Defendants reaped a financial "windfall" as a result of their predatory

11  practices.  *Id.*  Based on these allegations, Plaintiffs claim that the loan and trust must be considered

12  unconscionable.  *Id.*

13         Defendants argue that none of the actions Plaintiffs allege rise to the level of either

14  substantive or procedural unconscionability.  (ASC Mot. 18:14-15, Dkt. #5.)  Defendants further

15  argue that Plaintiffs have improperly brought their unconscionability claim against all Defendants

16  when, they claim, it is only relevant to those Defendants who entered into the loan contract with

17  Plaintiffs.  (CLTC Mot. 13:8-15, Dkt. #19.)

18         "Under California law, a contract provision is unenforceable due to unconscionability only if

19  it is both procedurally and substantively unconscionable."  *Shroyer v. New Cingular Wireless*

20  *Services, Inc.*, 498 F.3d 976 (9th Cir. 2007) (citing *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257,

21  1280 (9th Cir. 2006)).  Substantive unconscionability "focuses on the terms of the agreement and

22  whether those terms are so one-sided as to shock the conscience."  *Davis v. O'Melveny & Myers*,

23  485 F.3d 1066, 1075 (9th Cir. 2007) (citing *Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1042

24  (9th Cir. 2001)) (internal quotations omitted).  The "[p]rocedural unconscionability analysis focuses

25  on 'oppression' or 'surprise.'"  *Nagrampa*, 469 F.3d at 1280 (citing *Flores v. Transamerica*

26  *HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)) (internal quotations omitted).  To establish

27  oppression, there must be a showing that an inequality of bargaining power existed that resulted in

28

**UNITED STATES DISTRICT COURT**
For the Northern District of California

25

UNITED STATES DISTRICT COURT
For the Northern District of California

1   "no real negotiation and an absence of meaningful choice."  *Id.*  "[S]urprise involves the extent to

2   which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party

3   seeking to enforce them."  *Id.*

4          Plaintiffs do not allege any facts to support a finding that Defendants acted either

5   procedurally or substantively unconscionable.  Although Plaintiffs state in their Complaint that

6   Defendants acted from an unfair bargaining position, they offer no facts in support of this

7   contention.  Furthermore, Plaintiffs do not make any argument as to any hidden terms that would

8   suggest surprise was an issue in this case.  Similarly, Plaintiffs do not present any argument

9   sufficient to establish that the terms of the loan were "so one-sided as to shock the conscience."

10  Accordingly, because Plaintiffs have not met their burden of establishing either procedural or

11  substantive unconscionability, both of which are required to succeed on an unconscionability claim,

12  the Court GRANTS WITH LEAVE TO AMEND Defendants motion to dismiss Plaintiff's

13  eighteenth cause of action.  Plaintiffs may amend and re-file their claim for unconscionability only if

14  they can allege facts sufficient to meet the standard provided in this section.

15          14.    <u>Plaintiffs' Fourteenth, Twenty-First and Twenty-Second Causes of Action</u>

16          In their fourteenth cause of action, Plaintiffs seek to rescind their loan.  (Compl. ¶¶ 121-124.)

17  In their twenty-first cause of action, Plaintiffs allege that Defendants have no legal or equitable right

18  to the Property and thus seek to quiet title to the property.  *Id.* at ¶¶ 158-160.  Finally, in their last

19  cause of action, Plaintiffs name ASC, First American, Williams, and all other Defendants claiming

20  an interest in the Property, and allege wrongful foreclosure.  *Id.* at ¶ 163.  Plaintiffs state that

21  Defendants did not have the legal authority to foreclose or go ahead with the sale.  *Id.* at ¶ 164.

22          In their motions, Defendants claim that all three of the previously stated causes of actions are

23  properly considered remedies and not actual claims.  (ASC Mot. 18:28-19:1, Dkt. #5.)  Defendants

24  further argue that because Plaintiffs have failed to tender the full balance of their debt, they lack

25  standing to bring any action based upon the alleged foreclosure or seeking redress from the

26  foreclosure.  (CLTC Mot. 13:16-14:3, Dkt. # 19.)

27          "Under California law, the 'tender rule' requires that as a precondition to challenging a

28

26

foreclosure sale, or any cause of action implicitly integrated to the sale, the borrower must make a valid and viable tender of payment of the debt." *Montoya v. Countrywide Bank*, No. C09-00641 JW, 2009 WL 1813973, at *11-12 (N.D. Cal. June 25, 2009). "The essential requisites of tender are: (1) An unconditional offer to perform, coupled with a manifested ability to carry out the offer; (2) A production of the subject matter of the contract; (3) The property tendered must not be less than what is due; and (4) If greater, there must be no demand for a return of the excess." *Guy F. Atkinson Co. of California and Subsidiaries v. C.I.R.*, 814 F.2d 1388, 1393 (9th Cir. 1987). Tender of the full amount due is a prerequisite to an action for wrongful foreclosure or based on the irregularity or invalidity of a foreclosure sale. *Abdallah v. United Sav. Bank*, 43 Cal. App. 4th 1101, 1109 (1996) (citing *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal. App. 3d 1018, 1021-1022 (1989)). In California, the "tender rule" is strictly applied. *Nguyen v. Calhoun*, 105 Cal. App. 4th 428, 439 (2003).

In this action, it is uncontested that Plaintiffs have failed to tender the full amount due. Moreover, rescission, quiet title and wrongful foreclosures can all properly be considered causes of action that are each implicitly integrated to the foreclosure sale. Therefore, the "tender rule" bars Plaintiffs from bringing any of the aforementioned actions against Defendants. Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Defendants' motion to dismiss Plaintiffs' fourteenth, twenty-first and twenty second actions.

### V. CONCLUSION

Based on the foregoing, the Court hereby:

(1)     GRANTS WITHOUT LEAVE TO AMEND:

(a) Defendants' motion to dismiss Plaintiffs' third cause of action for declaratory relief against all Defendants; (b) Defendants' motion to dismiss Plaintiffs' fourth cause of action for breach of the covenant of good faith and fair dealing against all Defendants; (c) Defendants' motion to dismiss Plaintiffs' fifth cause of action for TILA violations against all Defendants; (d) Defendants' motion to dismiss Plaintiffs' sixth cause of action for RESPA violations against all Defendants; (e) Defendants' motion to dismiss Plaintiffs' seventh cause

of action against all Defendants except Signature; (f) Defendants' motion to dismiss Plaintiffs' eighth cause of action for violations of Cal. Civ. Code §§ 1918.5 - 1921.1920 against all Defendants except Signature; (g) Defendants' motion to dismiss Plaintiffs' ninth cause of action for violations of Cal. Civ. Code § 1916.7 B against all Defendants except Signature; (h) Defendants' motion to dismiss Plaintiffs' tenth cause of action for violations of Cal. Civ. Code § 1916.7(c) against all Defendants except Signature; (i) Defendants' motion to dismiss Plaintiffs' eleventh cause of action for violations of Cal. Civ. Code § 2079.16 against all Defendants; (j) Defendants' motion to dismiss Plaintiffs' twelfth cause of action for violations of Cal. Civ. Code § 1632 against all Defendants; (k) Defendants' motion to dismiss Plaintiffs' thirteenth cause of action for violations of Cal. Civ. Code § 1916.7a(8) against all Defendants except Signature; (l) Defendants' motion to dismiss Plaintiffs' fourteenth cause of action for rescission against all Defendants; (m) Defendants' motion to dismiss Plaintiffs' seventeenth cause of action for breach of fiduciary duty against all Defendants; (n) Defendants' motion to dismiss Plaintiffs' twenty-first cause of action for quiet title against all Defendants; and (o) Defendants' motion to dismiss Plaintiffs' twenty-second cause of action for wrongful foreclosure against all Defendants; and

(2)  GRANTS WITH LEAVE TO AMEND as detailed above:

(a) Defendants' motion to dismiss Plaintiffs' first cause of action for declaratory relief against all Defendants; (b) Defendants' motion to dismiss Plaintiffs' second cause of action for injunctive relief against all Defendants; (c) Defendants' motion to dismiss Plaintiffs' seventh cause of action against Defendant Signature; (d) Defendants' motion to dismiss Plaintiffs' eighth cause of action for violations of Cal. Civ. Code §§ 1918.5 - 1921.1920 against Defendant Signature; (e) Defendants' motion to dismiss Plaintiffs' ninth cause of action for violations of Cal. Civ. Code § 1916.7 B against Defendant Signature; (f) Defendants' motion to dismiss Plaintiffs' tenth cause of action for violations of Cal. Civ. Code § 1916.7(c) against Defendant Signature; (g) Defendants' motion to dismiss Plaintiffs' thirteenth cause of action for violations of Cal. Civ. Code § 1916.7a(8) against Defendant

28

Signature; (h) Defendants' motion to dismiss Plaintiffs' fifteenth cause of action for fraud against all Defendants; (i) Defendants' motion to dismiss Plaintiffs' sixteenth cause of action for violations of California's UCL against all Defendants; (j) Defendants' motion to dismiss Plaintiffs' eighteenth cause of action for unjust enrichment against all Defendants; (k) Defendants' motion to dismiss Plaintiffs' nineteenth cause of action for unconscionability against all Defendants; and (l) Defendants' motion to dismiss Plaintiffs' twentieth cause of action for violations of California's UCL against all Defendants.

Plaintiffs may file an amended complaint in compliance with the above directives within 30 days from this Order.  Within 30 days from receipt of Plaintiffs' amended complaint, Defendants shall file responsive pleadings.

**IT IS SO ORDERED.**

Dated: December 7, 2010

_____
Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California

29